No. 59,808

Evan J. Unger and Ronald Temple, *Appellants*, v. Marilyn Horn, County Clerk and Election Officer of Decatur County, Kansas, *Appellee*.

(732 P.2d 1275)

Opinion filed February 20, 1987.

*Kenneth Clark*, of Clark & Shelton, P.A., of Hill City, argued the cause, and *Allen Shelton*, of the same firm, was with him on the briefs for appellants.

*Terry L. Rogers*, county attorney, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

Lockett, J.: The plaintiffs, public officials, sought review by the district court of the county election officer's determination that recall petitions to remove them from office were legally sufficient. K.S.A. 25-4331. The district court upheld the decision of the county election officer. Plaintiffs appeal.

Evan Unger and Ronald Temple are elected and acting members of the Unified School District No. 294 Board of Education. Separate petitions for their recall from office were filed with Marilyn Horn, county clerk and county election officer. The petitions stated:

"I, the undersigned, hereby seek the recall of Evan J. Unger from the office of USD 294 Board Member Pos. on the following grounds: He fails to make educated decisions by not utilizing the expertise of professional educators employed by the district, preferring to substitute his personal prejudices; he violates the Kansas Open Meetings laws by participating in unannounced private meetings; he creates the appearance of impropriety in that he fails to exercise his judgment independent from that of his employer."

"I, the undersigned, hereby seek the recall of Ronald Temple from the office of School Board Member on the following grounds: As President of the School Board, fails to require or encourage a full examination of issues before the Board. He fails to utilize the expertise of professional educators employed by the district, preferring to substitute his personal prejudices, and he violates the Kansas Open Meetings law by participating in unannounced private meetings."

On June 2, 1986, Horn notified Unger and Temple that she had determined each petition was legally sufficient. Unger and Temple then filed this action in the district court to review Horn's decision. K.S.A. 25-4331.

The district judge reviewed the petitions. The judge concluded that, even though the plaintiffs had never been charged or convicted of a violation of the Kansas Open Meetings Act, the allegation that Unger and Temple had violated the Act was legally sufficient under K.S.A. 25-4302. Unger and Temple appeal that decision. Horn does not appeal the judge's decision that the other grounds alleged in the petitions were not sufficient.

Where a state constitutional provision provides for the recall of public officials, recall is viewed as a fundamental right which the people have reserved to themselves. When the power of recall is a fundamental right, statutes governing the exercise of the power are to be liberally construed in favor of the ability to exercise it, and any limitations on that power must be strictly construed. 63A Am. Jur. 2d, Public Officers and Employees § 190.

Article 4, Section 3 of the Kansas Constitution provides:

"All elected public officials in the state, except judicial officers, shall be subject to recall by voters of the state or political subdivision from which elected. Procedures and grounds for recall shall be prescribed by law."

All elected public officers are subject to recall. K.S.A. 25-4301. The statutory grounds for recall are conviction of a felony, misconduct in office, incompetence, or failure to perform duties prescribed by law. K.S.A. 25-4302.

The power to remove elected public officials at the discretion of their electors is not unique. The concept of recall, at the direct instance and upon the motion of the electors, the ultimate source of power in the State, is contained within our Constitution. The electors are as qualified to determine the capability and efficiency of their elected officials, after giving those officials an opportunity to perform the duties of their offices, as they were

when they first selected the officials to fill the positions. The elected public official takes the position for a fixed term with the condition attached that, should he violate a condition, he is subject to removal.

The recall of a local elected officer is conducted by the county election officer in the county where the petition is to be filed. K.S.A. 25-4319. The petition for recall must include a statement of the grounds for recall described in particular in not more than 200 words. K.S.A. 25-4320(a)(2). After the petition is filed, the county election officer determines the sufficiency of the petition. K.S.A. 25-4326. If the petition is determined to be sufficient, the county election officer, after notifying the election board and the official sought to be recalled that the petition was properly filed, prepares the ballots and calls a special election. K.S.A. 25-4328. The elected official sought to be recalled may file with the election officer a statement of not more than 200 words justifying his conduct in office. The election board must post copies of such statements for and against recall in conspicuous places at the polling place. K.S.A. 25-4329.

Any person aggrieved by the election officer's determination that the petition for recall was sufficient or insufficient has 30 days from the date of notice to bring an action to review that determination in the district court. K.S.A. 25-4331.

A majority of those states which have considered the sufficiency of allegations in recall petitions have held that the truth or falsity of such grounds must be determined by the electors, not the courts. See *Gilbert v. Morrow*, 277 So. 2d 812 (Fla. Dist. App. 1973). The trial court may not pass upon the truth or falsity of the grounds stated for removal from office, inasmuch as this is the province of the electors. Still, the charges must allege sufficient facts to identify to the electors the act or failure to act without justification which is urged as misconduct in office. See *Wallace v. Tripp*, 358 Mich. 668, 101 N.W.2d 312 (1960); *Mueller v. Jensen*, 63 Wis. 2d 362, 217 N.W.2d 277 (1974).

The claim that Unger and Temple are incompetent or have failed to perform a duty prescribed by law are not questions raised in the appeal. The only question is whether the allegation in the recall petitions, that Unger and Temple violated the Kansas Open Meetings Laws by participating in an unan-

nounced private meeting is misconduct in office, is sufficient. Unger and Temple claim that only a conviction for violating the Open Meetings Act is sufficient grounds for a recall of a public official.

K.S.A. 25-4302 provides, *inter alia,* that a *conviction* of a felony is required to subject a public officer to recall. A public official charged with a felony would not be subject to recall until convicted, unless the criminal act was also misconduct in office. A public official charged with embezzlement of the public funds he controlled would be subject to recall prior to being convicted in the felony criminal action. A public officer charged with misconduct in office, incompetence, or failure to perform duties prescribed by law is tried by the public in the recall election.

The Kansas Open Meetings Act requires that meetings for the transaction of governmental affairs or governmental business be open to the public. K.S.A. 75-4317. Any public officer who knowingly violates the Act is subject to a civil penalty not to exceed $500. K.S.A. 75-4320. Black's Law Dictionary 1150 (4th ed. rev. 1968) defines misconduct in office as "[a]ny unlawful behavior by a public officer in relation to the duties of his office, willful in character," citing *Wysong v. Walden,* 120 W. Va. 122, 125, 196 S.E. 573 (1938).

An allegation in a petition for recall that a public official willfully violated the Kansas Open Meetings Act is a legally sufficient claim of misconduct and may subject the public official to a recall election. The district judge correctly determined that Unger and Temple were subject to recall for a violation of the Kansas Open Meetings Act whether or not they were charged and convicted of the violation.

Unger and Temple also claim that the allegations in the recall petition did not state the grounds for recall "in particularity" as required by the statute.

The petition for a recall must in substance conform to the statutory requirements. Some states require a general statement only of the grounds on which the recall is sought. The Nevada Constitution and its recall statute each require that the recall petition set forth reasons why recall is demanded in 200 words or less. In *Batchelor v. District Court,* 81 Nev. 629, 408 P.2d 239 (1965), the Nevada Supreme Court found that the recall statute

did not require specificity. There the petition charged that the mayor had "lost the respect and confidence of the great majority of the citizens of Boulder City, Nevada, in that the manner in which he contrived to discharge the City Manager of said City violated the concept of fairness held by a majority of such citizens." The court determined that all that is demanded is that "the" reason for recall be stated, not that the reason be specific or even good. The merit of that reason as grounds for removal is for the electorate to determine, not the court. The reason, in whatever manner expressed, presents a political issue for resolution by vote, not a legal question for court decision.

Other states which have statutes requiring some allegation of specificity of the grounds for recall have held that the mere allegation of a violation of the law was not sufficient grounds to support a recall petition. For example:

*Gilbert v. Morrow,* 277 So. 2d 812 (Fla. Dist. App. 1973). The petition for recall stated as grounds for recall that "all four said men have failed to obey or comply with the Charter of the City of Parker and the Law of the State of Florida." 277 So. 2d at 813. No further grounds or charges were set forth in the affidavit. The court said that an officeholder has a property right in his office and this right may not be unlawfully taken away or illegally infringed upon. It added that "the charges must allege sufficient facts to identify to the electors the acts or failure to act without justification which are urged as misconduct in office." 277 So. 2d at 814.

*Steadman v. Hallard,* 197 Mont. 45, 641 P.2d 448 (1982). The Montana recall statute requires a petition to set out "a general statement of the reasons for recall in not more than 200 words." The petitioners had submitted a recall petition which stated that the sheriff "acted in a manner to bring discredit to himself and the Department by OFFICIAL MISCONDUCT stemming from an incident in Sweet Grass County on November 7, 1980."

The Montana court, in considering the sufficiency of the petition, noted that initial review of recall petitions is intended to save the public and government officials the time and expense of circulating and responding to a petition which is fatally defective. It concluded that the statement of the grounds for recall "is deficient because it does not acquaint the public, whose signa-

tures are requested, with the alleged acts constituting misconduct, nor does it permit Sheriff Shaffer to respond and defend himself adequately against the allegation of misconduct in the event that an election is required." 197 Mont. at 54. It added that recall charges are sufficiently specific if they are definite enough to allow the charged official to meet them before the tribunal of the people. "Otherwise discontented constituents could initiate a circulation petition by alleging misbehavior in terms so general that the object of the recall effort would be incapable of defending himself, and some electors would sign the recall petition with no idea of what words or acts of the official might have precipitated the recall effort." 197 Mont. at 54.

*Herron v. McClanahan*, 28 Wash. App. 552, 558, 625 P.2d 707 (1981). The Washington statute requires that the recall petition include as grounds for recall "an act or acts of malfeasance, or an act or acts of misfeasance while in office, or has violated his oath of office . . . which charge shall state the act or acts complained of in concise language, giving a detailed description including the approximate date, location and nature of each act complained of . . . ." The court said that the charges are sufficiently specific if they are definite enough to notify the charged official of the precise act or acts of alleged misconduct so as to enable him to make a meaningful public response to the merits of each charge and sufficient to inform the voters of the charge. 28 Wash. App. at 559.

The Kansas Constitution mandates that there be a recall procedure for public officers. The form and substance of the recall petition are prescribed by Kansas statutes. During the 1913 session of the Kansas legislature, it approved adding three sections to Article 4 of the Kansas Constitution for recall of public officers. The three sections were adopted by the voters during the November 1914 general elections. In the 1915 General Statutes, § 193 provides for recall. It states that "the petition and proclamation of election shall state in not more than two hundred words the reasons for the recall."

Recall procedures were later enacted for first, second, and third class cities and for school boards. For example, the General Statutes of 1949 § 13-1711 provided for recall of elective officers for first class cities. That statute required that the petition con-

tain "a general statement of the grounds for which removal is sought." The city clerk was required to ascertain whether or not the petition was signed by the requisite number of qualified electors and to then certify the petition to the commission.

In 1975, Senate Bill No. 438, a procedure to recall elective public officials, was introduced. The bill provided that the petition for recall "shall contain a general statement of the grounds upon which the recall is sought, which statement is intended solely for the information of the electors and the sufficiency of which shall not be open for review." The bill was referred to committee. In 1976, House Bill 2661 was drafted for consideration by the legislature. House Bill 2661 provided that each petition for recall of a local officer shall include "the grounds for recall described in particular in not more than two hundred (200) words." Both the Senate and House bills were referred to a special committee. The Reports of Special Committees to the 1976 Kansas Legislature reveals that major features of the recall laws of five states (Alaska, California, Colorado, Idaho, and Wisconsin) were compared. Of the five states, only the Alaska statute specified that the ground for recall be stated in particular.

The committee's recommendation for recall provided for a two-phase recall procedure prior to a possible recall election for state officers—an application and the recall petition. It stated that the application "should include, among other things, the grounds for recall described in particular in not over 200 words." In its recommendations to the 1976 legislature, the committee found that H.B. 2661 made the constitutional provisions for recall meaningful and prevented undue harassment of elected officials. Our current recall statutes followed the committee's recommendation and were enacted in 1976. K.S.A. 25-4320(a)(2) provides that each petition for recall of a local officer shall include "the grounds for recall described in particular in not more than two hundred (200) words."

Black's Law Dictionary 1275 (4th ed. rev. 1968) defines "particular" as "Relating to a part or portion of anything; separate; sole; single; individual; specific; local; comprising a part only; partial in extent; not universal. Opposed to general," citing *State v. Patterson*, 60 Idaho 67, 78, 88 P.2d 493 (1939). In *Foster v. Turner*, 31 Kan. 58, 1 Pac. 145 (1883), this court discussed

"particular," not general, questions of fact to be submitted to a jury. The court stated, "We think it is also true that the jury, in giving answers to *particular* questions of fact,' may sometimes be required to state facts themselves, to the extent of giving amounts, dates, weights, sizes, speed or velocity, time, distances, etc., . . . and perhaps sometimes of giving other facts which do not now occur to us."

It is obvious that the legislature intended, by adopting House Bill 2661's requirement that the grounds for recall be described in particular, that the petition for recall contain more than a general statement of the grounds for removal.

The 1976 amendment of the recall statutes requires specificity when stating the grounds for recall. The grounds stated in a recall petition must be specific enough to allow the official an opportunity to prepare a statement in justification of his or her conduct in office. Here, the charge is merely a general allegation that Unger and Temple violated the Open Meetings Act. Unless a particular allegation of the violation of the Open Meetings Acts is stated, Unger and Temple have no opportunity to refute the charge. The petitions for recall of Unger and Temple do not contain a clear statement of the alleged act or acts constituting the grounds for recall.

Reversed.

McFARLAND, J., dissenting: I believe that the majority has viewed the statutory recall of elected officials procedure from an improper perspective in determining the issue presented. The judiciary and all members of the bar are trained and experienced in the resolution of disputes in the adversary system utilized by courts. In a civil action, at some point in time, the moving party becomes locked into a position as to a theory or theories of liability and the facts relied upon to support the claimed recovery. The defending party must, at some point in time, assert the theory or theories of defense and the facts relied upon in the defense. Within this narrowed scope of issues, trial is had before the trier of fact who then determines the disputed factual questions. In criminal actions the rules are even more rigid. The information setting forth the violation of law which the State contends the accused committed is considered jurisdictional.

Failure to set forth all elements of the crime sought to be charged constitutes a fatal defect in the proceedings. Objections at trial of either civil or criminal cases cannot be general—they must specifically state the grounds for objections. In the adversary system, highly formalized rules of procedure have evolved for resolving the disputes presented with the trier of fact ultimately determining the controversy within a very structured framework. It is not surprising that the majority would view the issue herein from the perspective of what is appropriate for a judicial adversary procedure. However, such perspective is, in my opinion, improper herein and has resulted in the majority incorrectly deciding the ultimate issue raised. Recall elections are so unlike judicial proceedings that they cannot be viewed from the same perspective or judged on the same standards.

Inasmuch as each state with recall proceedings operates within its own statutory framework, cases from other jurisdictions have little value in deciding the issue before us.

Let us examine the statutes applicable to recall elections for local officers in Kansas.

K.S.A. 25-4318 provides:

"The recall of a local officer is proposed by filing a petition with the county election officer of the county in which all or the greater part of the population of the election district of the local officer is located, if not a school district, or the home county of the school district, if the election district of the local officer is a school district. The recall of a county election officer (if elected) is proposed by filing a petition with the county attorney of his or her county who shall perform the duties imposed on the county election officer in the recall of other local officers."

This statute is amplified by K.S.A. 25-4322, which provides:

"Before any petition for recall of a local officer is circulated, a copy thereof accompanied by names and addresses of the recall committee and sponsors shall be filed in the office of the county election officer with whom the petitions must be filed. The copy of the petition, so filed shall be subscribed by the members of the recall committee in the presence of such county election officer. The recall committee shall represent all sponsors and subscribers in matters relating to the recall. Notice on all matters pertaining to the recall may be served on any member of the recall committee in person or by mail addressed to a committee member as indicated on the petition so filed. The county election officer, upon request, shall notify the recall committee of the official number of votes cast for the office of the officer sought to be recalled in the last general election at which a person was elected to such office."

Thus, the first steps in an attempted recall proceeding are: formation of the recall committee, preparation of a recall petition by the committee, and the filing (prior to any circulation) of the petition with the county election officer. It is significant that: (1) The county election officer is not authorized to make any determination on any aspect of the validity of the proposed recall petition at this time; and (2) no notice of the filing of the petition or its contents is required to be served on the public officer who is the subject of the recall petition.

K.S.A. 25-4320 states what must be included in the petition, reproduced in part as follows:

"(a) Each petition for recall of a local officer shall include (1) the name and office of the local officer sought to be recalled, (2) the grounds for recall described in particular in not more than two hundred (200) words, (3) a statement that the petitioners are registered electors of the election district of the local officer sought to be recalled, (4) the names and addresses of three (3) registered electors of the election district of the officer sought to be recalled who shall comprise the recall committee, (5) the statement of warning required in K.S.A. 25-4321 and amendments thereto and (6) a statement that a list of all sponsors authorized to circulate recall petitions for such recall may be examined in the office of the county election officer where the petition is required to be filed. Each sponsor shall be a registered elector of the election district of the local officer sought to be recalled and of the precinct in which such sponsor circulates the petition.

"(b) Each page of a petition for recall of a local officer shall be in substantially the following form:

"I, the undersigned, hereby seek the recall of _____ from the office of _____, on the ground(s) that _____ , and
(state specific grounds)
declare that I am a registered elector of the _____ precinct of _____ Township (or the _____ precinct of the _____ ward of _____), _____ County, Kansas, and of the election district of the officer named above.

| Name of Signer | Street Number or RR (as Registered) | Name of City | Date of Signing |
|---|---|---|---|
|  |  |  |  |

Circulation of the recall petition is covered by K.S.A. 25-4324, which provides:

"The petitions shall be circulated in person by a sponsor and only in the precinct in which such sponsor resides. No petition shall be circulated in more than one county, and the county election officer of the county in which each petition is circulated shall certify to the county election officer where petitions

are required to be filed the sufficiency of the signatures on the petition. Any registered elector of such election district may subscribe to the petition by signing his or her name and address. A person who has signed the petition may withdraw his or her name only by giving written notice to the county election officer where petitions are to be filed before the date filed. The necessary signatures on a petition shall be secured within ninety (90) days from the date that the copy of the petition subscribed by the members of the recall committee is filed pursuant to K.S.A. 25-4322. The petition shall be signed only in ink. Illegible signatures unless accompanied by a legible printed name may be rejected by the county election officer."

### K.S.A. 25-4325 provides:

"Before being filed, each petition shall be certified by an affidavit by the sponsor who personally circulated the petition. The affidavit shall state in substance that (a) the person signing the affidavit is a sponsor, (b) the person is the only circulator of that petition or copy, (c) the signatures were made in his or her actual presence, (d) to the best of his or her knowledge, the signatures are those of the persons whose names they purport to be, and (e) the person circulated the petition in the manner provided by this act. In determining the sufficiency of the petition, the county election officer shall not count signatures on petitions not properly certified. The recall committee may file the petition only if signed by registered electors in the election district of the local officer sought to be recalled equal in number to not less than forty percent (40%) of the votes cast for all candidates for the office of the local officer sought to be recalled in the last general election at which a person was elected to such office, except that if more than one person was elected to such office at such election the number of signatures required shall be equal to not less than forty percent (40%) of the votes cast at such election for all candidates for the office divided by the number of persons elected to such office."

After the circulated petitions have been filed, the county election officer has a determination to make as to the sufficiency thereof. K.S.A. 25-4326 states:

"The county election officer of the county where petitions are required to be filed, with the assistance and cooperation of each other county election officer involved, shall determine the sufficiency of each petition for recall of a local officer. Within thirty (30) days of the date of filing, such county election officer shall review the petition and shall notify the recall committee and the local officer sought to be recalled whether the petition was properly or improperly filed. Such county election officer shall notify the recall committee that the petition was improperly filed if he or she determines that (a) there is an insufficient number of subscribing qualified registered electors, (b) the petition was filed within less than one hundred and eighty (180) days of the termination of the term of office of the local officer sought to be recalled, (c) the local officer sought to be recalled has been or is being subjected to another recall election during his or her current term of office, (d) petitions for the recall of other local

officers serving on the same governing    body have been properly filed and elections thereon have not been held and the number of such local officers equals a majority of the members of the governing body minus one or (e) the petition does not conform to any other requirement of this act."

Note: Requirements (b), (c), and (d) are contained in K.S.A. 25-4323.

If the petitions are determined to be sufficient, the county election officer then prepares the ballots and sets the election date. K.S.A. 25-4328.

K.S.A. 25-4329 provides:

"The county election officers shall provide each election board in the election district of the local officer sought to be recalled with four (4) copies of the statement of the grounds for recall included in the petition and four (4) copies of the statement of not more than two hundred (200) words made by the local officer sought to be recalled in justification of his or her conduct in office. The person sought to be recalled may provide the county election officer with his or her statement within ten (10) days after the date such county election officer gave notification that the petition was properly filed. Each election board shall post all copies of the statements for and against recall in conspicuous places at the polling place, one of which places shall be immediately outside, and one of which shall be immediately inside, the entrance to the polling place."

At what point and for what reason may the local officer sought to be recalled attempt to stop the recall procedure prior to the election? The only applicable statute is K.S.A. 25-4331, which provides:

"Any person aggrieved by a determination made the county election officer or county attorney of the county where petitions are required to be filed may bring an action to have the determination reviewed within thirty (30) days of the date on which notice of determination was given by action in the district court of such county."

Clearly, K.S.A. 25-4331 relates to the determination by the county election officer of sufficiency of the *circulated petition* pursuant to K.S.A. 25-4326. The election officer makes no determination of sufficiency except as provided by K.S.A. 25-4326. For convenience, prior to commenting upon them, the statutory items that the county election officer must determine are repeated.

"(a) there is an insufficient number of subscribing qualified registered electors . . . ."

In making this determination the election officer, *from his or*

*her own records,* determines how many signatures have to be present to satisfy the 40% of electors requirement contained in K.S.A. 25-4325. He or she then counts the names present on the petition and compares those names to his or her list of qualified electors. Here, again, no discretion is utilized. This is purely a clerical process.

*"(b) the petition was filed within less than one hundred and eighty (180) days of the termination of the term of office of the local officer sought to be recalled,*

*(c) the local officer sought to be recalled has been or is being subjected to another recall election during his or her current term of office,*

*(d) petitions for the recall of other local officers serving on the same governing body have been properly filed and elections thereon have not been held and the number of such local officers equals a majority of the members of the governing body minus one . . . ."*

Like (a), the determination of sufficiency of (b), (c), and (d) is purely clerical in nature based upon examination of records contained in the election officer's own records. No discretion or judgmental determination is required.

*"(e) the petition does not conform to any other requirement of this act."*

The majority assumes that the county election officer under (e) has a duty to make a judicial determination under (e) as to whether or not the grounds for recall in the petition are stated with sufficient particularity. I do not agree. Had such been the intention of the legislature, I believe it would have expressly so stated and would have established some standards or guidelines for the election officer to apply. I believe (e) applies to other requirements such as contained in (a), (b), (c), and (d) which are determined ministerially. Applicable examples would be whether or not a statement of grounds was included or whether or not the statement of grounds exceeded the 200-word limitation. The quality of the grounds stated was not intended to be subject to the election officer's determination of sufficiency any more than is the truth of the stated grounds.

I think the validity of this conclusion is buttressed by the wording of K.S.A. 25-4302, which provides:

"Grounds for recall are conviction of a felony, misconduct in office, incompetence or failure to perform duties prescribed by law. *No recall submitted to the voters shall be held void because of the insufficiency of the grounds, application, or petition by which the submission was procured."* (Emphasis supplied.)

Had insufficiency of the grounds been intended to be a part of any determination of the sufficiency of the petition, then the words "of the grounds" is mere surplusage in K.S.A. 25-4302. I do not believe inclusion of the phrase "of the grounds" is surplusage.

The majority opinion, from what I perceive to be an improper perspective, likens the recall election to a trial where the electors serve as judicial finders of fact in determining the truth of the charges (grounds for recall). This is not a realistic view of the election process. Voters may be angry with an elected official over how he or she voted on a controversial issue, the firing of a public employee upon taking office, how the officer behaved at some function, or a hundred other reasons—none of which is a valid ground for recall under K.S.A. 25-4302. These real grounds may have no relation at all to the stated ground for recall. Sponsors of the recall petition may secure signatures by verbally stating a dozen reasons for discontent with the public officer— none of which is related in any way to the grounds contained in the petition. The campaign prior to the recall election is limited in no way to the grounds stated in the petition. One cannot say that the vote is a determination of the truth or falsity of the grounds contained in the petition. By illustration, let us say the ground for recall is that John J. Claghorn was convicted of felony theft on June 23, 1957. (Note: conviction of a felony does not even have to have been recent or newly discovered.) The truth is unquestionably that: (1) the conviction was ten years earlier; or (2) it was an arrest and not a conviction; or (3) it was a misdemeanor; or (4) it was a different John J. Claghorn; or (5) the whole allegation was fictitious. No matter how irrefutable the true facts may be, the recall election cannot be aborted or invalidated after its occurrence. The majority opinion concedes this when it states the truth of the grounds is not a matter for judicial determination at any point in time. This concept is wholly alien to the adversary system utilized by the judiciary. To illustrate the dissimilarity, the following example is included. If the recall procedures were applied to criminal cases some charge of criminal activity would be filed against the accused by virtue of a petition circulated through the citizenry. At "trial" anyone

would be free to testify as to any crime, social misconduct, bad manners, or character flaw of the accused. There would be no limiting rules of relevancy or hearsay and no rules of procedure. The "jury" would have no instruction in the law as none would apply. At the end the "jury" would have two verdicts to choose from—guilty or innocent—without any specification as to what the accused was guilty of. A vote of guilty could be predicated solely upon personal views of the accused's character—wholly unrelated to any "evidence" introduced at trial. The concept that one must know precisely what he must defend against is absent from the election process.

If grounds are of minor importance, the question could be asked why include them at all as a requirement for inclusion in recall petitions? They do, generally, serve some purpose. Ordinarily, the stated grounds provide at least a focus for the elector's complaints against the official. As a practical matter, the requirements for grounds may have provided a balm to nervous officeholders at the time the recall election statutes were enacted. I do not believe any vehicle has been provided for determination (and judicial review) of the sufficiency of the stated grounds, and we have no jurisdiction to determine such sufficiency.

In the alternative, I would conclude that, even if the issue of sufficiency of the grounds is properly before us, the grounds are sufficient. Under the rationale of the majority, grounds for recall, even if otherwise legally sufficient, may not subject the officeholder to recall if their complexity precludes stating them with particularity in 200 words or less. To iterate, the recall election process is not a judicial proceeding. Particularity in stating grounds for recall is not the same as that required in criminal charges. Sponsors of the recall petition do not have to state dates, times, persons present, and matters discussed in alleged violations of the Open Meetings Act. They have stated that violations of the Act have occurred. The matter is then open to public debate and would, I am sure, be fully explored in the pre-election campaign.

In concluding, I agree with the following statement from *Batchelor v. District Court*, 81 Nev. 629, 633, 408 P.2d 239 (1965), relative to sufficiency of the grounds for a recall election:

"The merit of that reason as ground for removal is for the electorate to determine, not the court. The reason, in whatever manner expressed, presents a political issue for resolution by vote, not a legal question for court decision. 'All political power is inherent in the people. Government is instituted for the protection, security and benefit of the people; and they have the right to alter or reform the same whenever the public good may require it.' Nevada Constitution, Art. 1, § 2. In theory, a public officer need not fear recall if the reason given therefor is frivolous. In such case the required number of signatures on the petition to force an election should not be obtained and, if perchance, the required number of signatures is obtained, an intelligent, informed electorate reading the reason printed on the ballot as required, will not vote to recall him. Our governmental scheme dignifies the people; a treasured heritage, indeed. The provision for recall is but one example. We shall not intrude upon the people's prerogative."

I would affirm the district court.