STATE of Missouri, ex rel., CITY COUNCIL OF the CITY OF GLADSTONE, Missouri, Bill Patterson, Charlie Eberspacher, Larry Whitton, and C. Milton Wallace, Relators,

v.

The Honorable John M. YEAMAN, Judge of the Circuit Court of Platte County, Missouri, Division I, sitting as Division II of the Circuit Court of Clay County, Missouri, Respondent.

STATE of Missouri, ex rel., Robert E. McCLELLAN, George E. Hester, Phillip K. Phillips, Melvin E. West, Carl S. Cannova, Linda L. Thornton, William R. Shepard, Anita Duncan and Bill Reynolds, Cross-Appellants,

v.

CITY COUNCIL OF the CITY OF GLADSTONE, Missouri, Bill Patterson, Charlie Eberspacher, Larry Whitton, C. Milton Wallace, J. Robert Ashcroft, the Board of Election Commissions of Clay County, Missouri, Judith F. Ferguson, Carol M. Isley, James L. Younger, Steven R. Hurst, Appellant-Cross-Respondents.

No. WD 41075.

Missouri Court of Appeals, Western District.

Oct. 20, 1988.

Michael E. Waldeck, Kansas City, for State ex rel. McClellan, et al.

Leary G. Skinner, Liberty, for State ex rel. City Council of Gladstone, et al.

James Franklin Ralls, Jr., Kansas City, for Bill Patterson.

James C. Bowers, Jr., Kansas City, Abe Shafer, IV, Weston, for C. Eberspacher and C.M. Wallace.

John B. Ewing, Russell D. Jacobson, Kansas City, for Larry Whitton.

Max W. Foust, Kansas City, for J. Robert Ashcroft.

John Richard Shank, Jr., Gladstone, for Board of Election Com'n of Clay County.

Before COVINGTON, P.J., and SHANGLER and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

The removal by recall petition of four Gladstone, Missouri councilmen gives rise to this matter. Section 77.650, RSMo 1986. (All statutory references will be to the Revised Statutes of 1986). This court had issued a preliminary order in prohibition. The disposition of the writ is here combined with the direct appeals of the Gladstone Residents ("Residents") who sought the recall and of the City Council ("Council") and individual members of the Council.

The pertinent portions of § 77.650, dealing with recall procedure:

1. The holder of any elective office in a third class city may be removed by the qualified voters of such city by recall petition in accordance with the procedure set out in sections 77.650 to 77.660 subject to the following limitations:

(1) The officer has held office for at least six months;

2. A petition signed by voters entitled to vote for a successor to the incumbent sought to be removed, equal in number to at least twenty-five percent of the total number of registered voters in such city, demanding the recall of a person from elective office shall be filed with the county clerk which *petition shall contain a statement of the reasons for which recall is sought* which shall not be more than two hundred words in length. Such petition for recall shall be filed with the appropriate county clerk or election authority within sixty days after the date of the earliest signature on the petition. *The reasons for recall are misconduct in office, incompetence or failure to perform duties prescribed by law.* The signatures to the petition need not be appended to one paper, but each signer shall add to his signature his place of residence, giving the street and number and the date signed. One of the signers of each such paper shall make oath before an officer competent to administer oaths that the statements therein made are true as he believes and that each signature to the paper amended is the genuine signature of the person whose

name it purports to be. (Emphasis added).

\* \* \* \* \* \*

THE CHRONOLOGY OF EVENTS (all occurred in 1988)

April 5 — City election where two new members, Eberspacher and Patterson, were elected.

May 25 — The Residents, nine Gladstone voters, began circulating petitions for signatures to recall four members of the city council (Eberspacher, Patterson, Whitton and Wallace).

July 23 — The recall petitions were filed.

August 23 — As relators, the Residents, filed a writ of mandamus to require the respondent Council to submit the question of recall of four Council members, defendants Eberspacher, Patterson, Whitton and Wallace, on the November 8, 1988 general election ballot.

September 6 — A hearing on the Residents' writ was scheduled in Clay County. Judge Elliott who was to hear the case had a death in the family, so on September 6th Judge John Yeaman was assigned to the case. The attorney for councilmen Wallace and Eberspacher made an oral request for a change of judge. Rule 51.05. The request was denied, "at this time." The cause was adjourned until September 16, 1988 and added as additional respondents were another councilman, Ashcroft, and the Clay County Election Board.

September 16 — Evidence was presented on the mandamus action. No further mention or written motion was made for a change of judge.

September 19 — Judge Yeaman issued a writ of mandamus requiring the names of two of the councilmen, Whitton and Wallace, to be subject to recall at the general election. The court ruled Patterson and Eberspacher were not subject to recall.

September 22 — The Council as a whole plus individual councilmen, Wallace, Whitton, Eberspacher and Patterson filed a writ of prohibition in this court.

September 23 — This court issued a preliminary order in prohibition for failure to grant the change of judge under Rule 51.05.

September 26 — The Council and the four councilmen filed an appeal as to the portion of the judgment in mandamus submitting Whitton and Wallace to recall.

September 29 — The Residents cross-appealed as to the mandamus decision which did not subject Eberspacher and Patterson to recall.

The preliminary order in prohibition and the two appeals have been consolidated. Since the mandamus judgment appealed from requires the recall of two councilmen to be on the November, 1988 ballot, and since all issues would be moot before the issues presented by both sides could be adjudicated on appeal, this case has been expedited, the briefing schedule constricted and argument had on October 12, 1988. *State ex rel. McClellan v. Godfrey*, 519 S.W.2d 4, 6 (Mo. banc 1975). The Council and the four members raise four points on their appeal. In summary those points concern the failure of the recall petitions to describe the acts or conduct for which recall was being sought; too few signatures were on the petitions; the recall as being premature; and, the decision of the Council to put the measures on the ballot was a discretionary act which was not done arbitrarily making mandamus inappropriate.

■ The Residents appeal the ruling adverse to them on the newly elected councilmen. This court has determined a single point of the Council's appeal is common to all four recall petitions and controls the disposition of the entire matter. So, in the interest of judicial economy and the desirability of a swift adjudication, *Foremost-McKesson, Inc. v. Davis*, 488 S.W.2d 193, 196 (Mo. banc 1972), the court will take up and discuss the Council and four councilmen's point to the effect the recall petitions did not contain a statement of the specific acts supporting the reasons for the recall.

The mechanics of the recall process are covered in § 77.655, the relevant provisions which are now set out:

Within ten days from the date of filing such petition, the county clerk of such third class city shall examine and from the voters' register ascertain whether or not said petition is signed by the requisite number of voters ... and he shall attach to said petition his certificate, showing the result of said examination. If by the clerk's certificate the petition is shown to be insufficient, it may be amended within ten days after such amendment, make like examination of the amended petition, and if his certificate shall show the same to be insufficient, it shall be returned to the person filing the same, without prejudice, however, to the filing of a new petition to the same effect. *If the petition shall be deemed to be sufficient, the clerk shall submit the same to the council without delay. If the petition shall be found to be sufficient, the council shall order the question to be submitted to the voters of the city.* (Emphasis added)

The Council found the petitions as to Eberspacher and Patterson insufficient because of § 77.650.1(1) *supra,* because the councilmen had not been in office for six months. The Council failed to find any of the four recall petitions sufficient because of a lack of specificity in the stated reasons for the recall. As noted earlier, the trial court sustained the Council and refused to mandate the recall election of those two councilmen who had not been in office for six months. Section 77.650.1(1), *supra.*

The statements of reasons in the petitions circulated by the residents fell within the 200 word statutory limit, but did not contain any language describing the statement of reasons for the recall of the four councilmen. That statement in the petitions merely repeated the three statutory reasons for recall. It read as follows: "For the recall of (name) under RSMo. 83, Chapter 77.650, 77.655 and 77.600 for one or more of the following reasons: misconduct in office, failure to perform duties prescribed by law or incompetence in guiding the city affairs with regard to Gladstone residents." Section 77.650.2, *supra.*

This court deems a mere recitation on the recall petition of the bare statutory reasons for recall as insufficient to cause mandamus to issue. No Missouri appellate case has dealt with this precise issue.

The Residents say no specificity is required by the statute. They claim the reasons for recall will come into focus by the time of the recall election. This approach is not adopted even though, "[I]nitiative, referendum and recall are rights reserved by the people, and as such are to be construed to make effective the reservation of power by the people." *State ex rel. Ferro v. Oellermann,* 458 S.W.2d 583, 586 (Mo. App.1970). *Ferro* held mandamus to be the proper remedy to compel action in the recall of a mayor. The Eastern District also alluded to the policy in this state not to thwart this power which rests in the people. *Id.* As noted in *Meiners v. Bering Strait School District,* 687 P.2d 287, 294 (Alaska 1984), recall came into the political process as a companion to initiative and referendum. Its purpose was to give the voters "a check on the activities of their elected officials above and beyond their power to elect another candidate when the incumbent's term expires." *Id.* (Footnote omitted) Alaska's high court said recall is a political process and should not have over-technical shackles put on by the judiciary, but that such interpretations could be avoided by having complete and carefully drawn statutes. *Id.* at 296. The *Meiners* opinion did recognize, and this court concurs, that there is a difference between recall and initiative and referendum; namely, in recall a "particular person's continuance in office is at stake, not just the fortunes of a policy or issue. This is why the recall process includes such things as a statement of grounds ..." *Id.* at 296 n. 7.

The Eastern District has recognized the necessity for some specificity in the charges used as a basis for impeachment of officers of third class cities. *State ex rel. Powell v. Wallace,* 718 S.W.2d 545 (Mo. App.1986). In § 77.340 impeachment of officers of third class cities there is a hearing procedure by which an officer can respond to charges brought against that person. These charges do not "have to meet the

technical precision of a criminal indictment or information," but to be sufficient must be specific enough to "fairly" apprise the reasons for removal. *Powell,* 718 S.W.2d at 548. The court in *Powell,* held sufficient the charges levied against the mayor which included failure to competently manage the police department, improper declaration of a civil emergency so as to gain control of the city treasury, and for bankruptcy on behalf of the city, without council approval. *Id.* at 546–48.

This court adopts the rationale of *Powell* and the concept of requiring some degree of specificity in the petition which are legally sufficient. More importantly, the petition should advise the official of how to proceed within the crucible of a public recall election. It is as important to have these charges fairly expressed at the time the petition is circulated, as it is to have those issues refined by the time a final vote is had on the recall. *Bricker v. Banks,* 98 Cal.App. 87, 276 P. 399, 400 (1929). This court does not interpret the legislative intent behind § 77.650 to contemplate approval of having additional or beefed up charges surface during a campaign where nothing specific was on the recall petition itself. *Davis v. Friend,* 507 So.2d 796, 797 (Fla.App.1987).

■ The 200 word limitation provides enough space so that the voting public and the official being recalled can be adequately informed of the actions or conduct which constitute misconduct, incompetence, or failure to perform legal duties. *Matter of Recall of Call,* 749 P.2d 674, 676 (Wash. banc 1988).

Several courts have confronted the issue of sufficiency of recall petition language. Although the applicable Michigan statute required the reasons for recall to be stated clearly, the court in *In re Wayne County Election Com'n,* 388 N.W.2d 707, 712 (Mich.App.1986), said that requirement was to give the public notice and the official notice of conduct constituting recall, in accordance with, "a basic policy of informed decision-making in a democratic society."

■ It is not the function of a reviewing court to rule on the truth or falsity of the charges, only to determine the sufficiency of the reasons. *Moultrie v. Davis,* 498 So.2d 993, 996 (Fla.App.1986).

Held factually inadequate were petition reasons given in the recall of a Washington judge for refusing "a defendant the right to have counsel," allowing a policeman to testify while "high on drugs," and finding a defendant guilty of speeding where the offense occurred in another jurisdiction and refusing to "grant a continuance which had not been asked for." *Jenkins v. Stables,* 751 P.2d 1187, 1188–89 (Wash. banc 1988).

Kansas statutory provisions as to the clarity of reasons for recall are more detailed than those of Missouri. Nevertheless, this court approves the reasoning behind the decision in *Unger v. Horn,* 240 Kan. 740, 732 P.2d 1275 (1987). In *Unger,* school board members were the subject of recall petitions, as pertinent here, for violating the Kansas Open Meetings law, "by participating in unannounced private meetings." *Id.* at 1277. The court held the reason must be specific enough to allow the official an opportunity to defend his or her conduct in office. A general allegation does not satisfy that end. *Id.* at 1281.

■ In fine, the lack of any specificity here, the mere repetition of the statutory language in the petition does not afford the potential signers of the petition adequate reason affixing their signature, nor does it give an official subject to recall a fair opportunity to wage a defense. The petitions here are held to be insufficient as to all four candidates subject to recall by petition.

The holding in this case is a limited one. The case at bar stands only for the proposition that some specific reasons for the recall of elected officials must be given in a petition to satisfy the requirements of § 77.650.2. The question of how much specificity is enough must be decided on a case by case basis.

Perhaps the legislature would be well advised to look to other state statutes which utilize more specific statutory language to guide its citizens.

In Missouri, other than a lawsuit such as this in mandamus by the voters, or an action by an office holder attacking the reasons stated in the petition, there is no quick and reliable way to get a clearance on language where election dates are close at hand. The legislature should ponder a statutory mechanism to deal with other problems in the process; a) what is done where a majority of the members of a body are the object of a recall; b) should the courts be used for some type of speedy determination, of the sufficiency of the ballot charges before and not after circulation of the recall petitions. *Morton v. McDonald,* 252 P.2d 577, 578 (Wash.1953); c) should the allegations be detailed and handled with a hearing process such as an impeachment? Section 77.340.

Again, under the reading of the present scheme, §§ 77.650 to 77.660, this court cannot discern a legislative intent to do as the Residents propose—to just let the voters be advised during the election by the presenters of the recall petitions of their reasons, with then a response by the affected elected officials. If the legislature decides "general dissatisfaction" is enough to solicit signatures and then vote at an election is sufficient for recall, then § 77.650.2 can be easily amended.

The judgment is affirmed as to Patterson and Eberspacher, but for the reasons stated previously. The judgment is reversed as to Whitton and Wallace. The Board of Election Commissioners need not put any of the four councilmen's names on the November 8th ballot. As to any absentee ballots already received, as to the recall of Whitton and Wallace, the board shall not be required to consider, count, or tabulate those portions of those ballots—any voter irregularity on the recall portion of any absentee ballot shall not spoil or invalidate the ballot as to any other matter voted on. If, as of the date of handdown of this opinion it is too late to leave the recall portion off the election day ballots submitted to the Gladstone voters, then, the same procedure should be followed as was outlined in the previous sentence. The amended preliminary order in prohibition, issued as a matter of discretion need not be definitively examined due to the dispositive point on appeal, and is now quashed. *Derfelt v. Yocom,* 692 S.W.2d 300, 301 (Mo. banc 1985). Costs are assessed against the Residents. Rule 77.01.

All concur.