(19 P.3d 193)
No. 84,420

Robert Reynolds, Helen Lytle, and Mary Lenherr, *Appellants*, v. Susan Figge, as County Clerk and County Election Officer of Pottawatomie County, Kansas; and Rita J. Muckenthaler, Eva Gentry, and Randy L. Dick, Members of the Recall Committee, *Appellees*.

Opinion filed February 23, 2001.

*Fred W. Rausch, Jr.*, of Fred W. Rausch, Jr., Chartered, of Topeka, for appellant.

*Bill Pauzauskie* and *Stanley E. Oyler*, of Oyler & Pauzauskie, of Topeka, for appellee.

Before Marquardt, P.J., Green, J., and Rogg, S.J.

Green, J.: Robert Reynolds, Helen Lytle, and Mary Lenherr, members of the Unified School District No. 321 (U.S.D. 321) Board of Education, appeal from the trial court's judgment determining that recall petitions filed against them were sufficient to hold recall elections. On appeal, Reynolds, Lytle, and Lenherr (collectively referred to as appellants) challenge the sufficiency of the

recall petitions in a number of respects. We affirm in part and reverse in part.

Appellants brought this action after separate recall petitions seeking appellants' removal as members of the U.S.D. 321 school board were filed against them. The recall petitions stated the following grounds:

"That [he or she] has violated board policies, including recognition that authority rests with the entire board, and not in individual members nor the superintendent; that all members should be permitted to participate fully in board discussion. These violations have occurred when [he or she] has acted as directed by the superintendent, including participation in scripted . . . board meetings where scripts have been prepared by the superintendent; and when discussion by certain members has been abruptly cut off.

"[He or she] has failed to represent the people in the district on all matters of public education by not enforcing the terms of the superintendent's employment contract; being rude and disrespectful to board members and the public at board meetings and not permitting citizens present to be heard prior to board decisions; and refusal to answer questions at board meetings.

"The foregoing demonstrates incompetence to serve as a board member in the best interest of the constituency."

Although the trial court determined that several of the reasons for recalling appellants were vague and indefinite, the trial court concluded that at least one reason was sufficient. Therefore, the trial court determined that Susan Figge, the county election officer for Pottawatomie County, Kansas, could proceed with the recall elections. The trial court granted appellants' motion for a stay order, allowing for this interlocutory appeal.

## Was the Recall Committee Properly Organized?

Although appellants raise 16 issues on appeal, the issues can be condensed to three general questions. The first is whether the trial court correctly determined that the recall committee was legally organized. Appellants argue that the recall committee was not legally organized because the members of the committee did not reside in the same election districts as appellants.

The right to recall public officials has been recognized in the Kansas Constitution since 1914; however, no specific grounds for recall were stated in the constitutional provisions. In 1974, the

recall provisions of Article 4, Section 3, of the Kansas Constitution were amended to state: "All elected public officials in the state, except judicial officers, shall be subject to recall by *voters of the state or political subdivision from which elected.*" (Emphasis added.) See K.S.A. 25-4301.

The method of organization of a recall committee is set forth in K.S.A. 25-4320(a). Subsection (a)(3) of the statute requires that the members of a recall committee be registered electors of the "election district" of the local officer sought to be recalled. Appellants insist that the term "election district" as used in K.S.A. 25-4320(a)(3) refers to one of the three subdistricts which comprise the U.S.D. 321 school district rather than the entire school district.

U.S.D. 321 school board members are elected under voting plan-B as set forth in K.S.A. 25-2005(c), which provides for "voting by a district method in the primary and by election at large in the general election." See K.S.A. 72-8003(b). As such, the issue is whether the term "election district" as used in K.S.A. [ ] 25-4320(a)(3) refers to a subdistrict or the entire school district. This is an issue of first impression.

Our standard of review on issues of statutory construction is as follows:

"It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. [Citation omitted.] The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.] Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. [Citation omitted.]" *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998).

Our Supreme Court has recognized that recall is a fundamental right which the people have reserved for themselves. Statutes governing the exercise of that power are to be liberally construed in favor of the ability to exercise it and any limitations on that power must be strictly construed. *Unger v. Horn*, 240 Kan. 740, 741, 732

P.2d 1275 (1987) (citing 63A Am. Jur. 2d, Public Officers and Employees § 190).

Although our appellate courts have not previously considered the meaning of the term "election district" as used in K.S.A. 25-4320, the issue has been addressed in attorney general opinions. For example, the attorney general addressed the procedure for recall of a commissioner when the boundaries of the commissioner's district had been altered after the election of the commissioner. The attorney general opined that "the election district referred to in K.S.A. [ ] 25-4320 . . . is the one which currently exists and *which the local official in question now represents*. To hold otherwise would allow recall of an elected official by individuals who now cannot vote to fill that official's position." (Emphasis added.) Att'y Gen. Op. No. 90-120.

Another attorney general opinion addressed the procedure applicable to the recall of members of the U.S.D. 254 Board of Education when the member district boundaries had been changed since the previous general election at which members of the board were elected. The members of the school board were elected under voting plan-C, as described in K.S.A. 72-8003(c). Under that voting plan, six members of the board were elected to member positions numbers one through six. Electors residing in the correspondingly numbered member districts were the only electors to vote in the primary and general elections for the member position.

When electors of the school board proposed the recall of members of the board of education in positions No. 2 and No. 3, it was unclear which electors would be qualified to sign the petitions seeking recall of the board members because of the change in the member district boundaries. The boundary changes resulted in some board members no longer residing in the member district correspondingly numbered to the member position occupied by the board member.

The attorney general opined that "[a]s the term is used in K.S.A. 25-4320 . . . 'election district' refers to the member district as it *exists after alteration of the member district boundaries and which the board of education member now represents*. . . . Those electors residing in the areas now constituting member district # 2 and

member district # 3 are, therefore, qualified to sign the petitions seeking recall of their respective members of the board of education." (Emphasis added.) Att'y Gen. Op. No. 97-28.

The facts of the attorney general opinion are distinguishable from the facts of the present case. For example, U.S.D. 254 and U.S.D. 321 each used different voting plans to elect its school board members. The U.S.D. 254 school board members were elected in both the primary and general elections by electors from their subdistricts, whereas appellants were elected by election at large in the general election.

Nevertheless, considering the language of the Kansas Constitution and the attorney general opinions, we find that the term "election district" as used in K.S.A. 25-4320 refers to the political subdivision from which local officials are elected. Because appellants were elected in the general election by electors from the entire school district, and not merely one of the subdistricts, the entire U.S.D. 321 school district is the election district. Accordingly, any elector from the U.S.D. 321 school district may petition for appellants' recall. The trial court properly determined that the recall committee was legally organized because all members of the committee were residents of the U.S.D. 321 school district.

## Were the Recall Petitions in Proper Form?

The next general issue is whether the form of the circulated petitions comply with the applicable statutes. Appellants argue that a petition for the recall of a local officer is not legally sufficient if the petition does not fully comply with the specific provisions of K.S.A. 25-4320(b) and K.S.A. 25-4321. Specifically, appellants contend that the petitions filed against them are not sufficient because each page of the petitions do not contain the required warning and, thus, are not in the proper form. Our courts have not previously considered the proper form of recall petitions.

K.S.A. 25-4320(a) lists the components of a petition for recall of a local officer. The statute requires that "[e]ach *petition* for recall of a local officer shall include . . . the statement of warning required in K.S.A. 25-4321, and amendments thereto." (Emphasis added.) K.S.A. 25-4320(a)(5). Subsection (b) of the statute pro-

vides that "[e]ach page of a petition for recall of a local officer shall be in substantially the following form." The subsection then provides a sample form which includes a warning statement. The warning provision to be included on a recall petition is required by K.S.A. 25-4321:

"Any person who signs a name other than that person's own name to a petition for recall of a local officer, or who knowingly signs more than once for the same proposition at one election, or who signs the petition knowing he or she is not a registered elector is guilty of a class B misdemeanor. Each page of the petition shall include a statement of warning of this crime."

The purpose of including the warning statement in a recall petition is to alert potential signers that it is a crime to falsely sign the petition. The first page of each petition filed against appellants were the only pages that were signed by the petitioners and each of these pages contained the warning required by K.S.A. 25-4320(a)(5). It would be nonsensical to require the recall committee to include the warning on the second and third pages of the petitions because those pages did not include signatures of petitioners. Instead, the additional pages of the petitions contained affidavits and continuations of the statements of grounds for recall.

Appellants allege that the legislature required the warning to be included on each page of a petition, regardless of whether the page contained signatures of petitioners, to prevent the circulators of the petition from altering the additional pages. This argument, however, is flawed because the warning does not pertain to the substance of the allegations contained in the petitions.

We read K.S.A. 25-4320(b) and K.S.A. 25-4321 as requiring each page of a petition containing signatures of petitioners to include the warning statement. As a result, we determine that the petitions filed against appellants comply with the statute because the required warning is included on the pages of the petitions containing the petitioners' signatures.

## Were the Grounds Stated in the Recall Petitions Sufficient to Allow Recall Elections?

The last broad issue is whether the grounds stated in the recall petitions are legally sufficient to allow the recall elections to pro-

ceed. Appellants maintain that the allegations in the recall petitions failed to state a ground for recall with sufficient particularity. In the alternative, the appellants maintain that the grounds are insufficient to show incompetence. Appellants further contend that since the recall petitions listed a number of grounds for holding the recall elections, some of which were found to be legally insufficient by the trial court, the entire petitions are invalid because it is impossible to determine if the individuals signing the petitions would agree with the allegations found sufficient.

## A. WERE THE GROUNDS FOR RECALL STATED WITH SUFFICIENT PARTICULARITY?

Appellants initially claim that the allegations in the recall petition do not state the grounds for recall with sufficient particularity as required by K.S.A. 1999 Supp. 25-4302. The statute provides that grounds for recall of elected officers are "conviction of a felony, misconduct in office, incompetence or failure to perform duties prescribed by law." Appellants contend that the recall petitions alleging their incompetence are so vague as to prevent them from submitting meaningful statements against recall as allowed by K.S.A. 25-4329. This statute permits a local officer subject to a recall election to submit "within ten (10) days after the date [the] county election officer gave notification that the petition was properly filed" a "statement of not more than two hundred (200) words made by the local officer sought to be recalled in justification of his or her conduct in office." Copies of the statements for and against recall must be conspicuously posted at the polling places. K.S.A. 25-4329.

Only a handful of Kansas appellate cases have addressed the degree of specificity required by our recall statutes. In *Unger v. Horn*, 240 Kan. 740, 732 P.2d 1275 (1987), members of a local school board appealed the trial court's determination that recall petitions filed against them were legally sufficient under K.S.A. 25-4302. The only question on appeal was whether the petitions sufficiently stated misconduct in office by alleging that the board members "violated the Kansas Open Meetings Laws by participating in an unannounced private meeting." 240 Kan. at 742-43. The

*Unger* court noted that "[t]he grounds stated in a recall petition must be specific enough to allow the official an opportunity to prepare a statement in justification of his or her conduct in office." 240 Kan. at 747. In holding that the allegations in the recall petitions failed to state a ground for recall with sufficient particularity because the petitions contained no more than a general statement of the ground for recall, the *Unger* court declared:

"Unless a particular allegation of violation of the Open Meetings Acts is stated, Unger and Temple have no opportunity to refute the charge. The petitions for recall of Unger and Temple do not contain a clear statement of the alleged act or acts constituting the grounds for recall." 240 Kan. at 747.

The *Unger* test was applied in the case of *Baker v. Gibson*, 22 Kan. App. 2d 36, 37, 913 P.2d 1218 (1995). This appeal involved a recall petition alleging that a sheriff was incompetent. The petition alleged in part as follows:

" 'In November of 1993 over half of the county Drug Task Force signed a letter asking the Sheriff to resign due to his inability to function as a leader. He refused, so they resigned. After the displays of violence and drunkedness [*sic*] they were uncomfortable with his decision making abilities. (INCOMPETENCE JUDGED BY HIS PEERS)' "

This court held that "the general allegations in the recall petition relating to the sheriff's leadership abilities in connection with the Drug Task Force do not meet the standards set by the court in *Unger*." 22 Kan. App. 2d at 46.

The only previous Kansas appellate case to find that a recall petition stated sufficient grounds to hold a recall election is *Cline v. Tittle*, 20 Kan. App. 2d 695, 891 P.2d 1137, *rev. denied* 257 Kan. 1091 (1995). In *Cline*, a county attorney appealed the trial court decision reversing his determination that a recall petition filed against members of the local school board failed to state sufficient grounds for recall. The petition alleged in part as follows:

" 'At a special meeting of the Board of Education on September 13, 1993, Board Member Mark Kerr voted to discontinue the wrestling program notwithstanding the commitments to coaches and other schools and the costs already incurred with his approval. The agenda for the September 13 meeting did not inform the public that discontinuance of the wrestling program would be considered by the Board.

" 'Mark Kerr has ignored the plainly expressed desire of his constituents concerning the wrestling program. That, combined with his wasteful, arbitrary and secretive conduct as a member of the Board, demonstrates his incompetence to continue to serve.' " 20 Kan. App. 2d at 696.

This court held that "the recall petitions alleged incompetence, one of the four grounds for recall listed in K.S.A. 25-4302, and the allegations were described with sufficient particularity in not more than 200 words so as to allow the officers to respond." 20 Kan. App. 2d at 703.

Here, although appellants filed statements against their recall, they contend that the grounds for recall are not stated with sufficient particularity for them to meaningfully respond to the allegations of incompetence. The written allegations of the recall petitions can be restated as follows:

1. Appellants have violated board policies, including their failure to recognize that authority rests with the entire board and not in individual members nor the superintendent;

2. Appellants have failed to recognize that all members should be permitted to participate fully in board discussion;

3. These violations have occurred when appellants have acted as directed by the superintendent, including participation in scripted board meetings where scripts have been prepared by the superintendent;

4. Appellants have caused discussion by certain board members to be abruptly cut off;

5. Appellants have failed to represent the people in the district on all matters of public education by not enforcing the terms of the superintendent's employment contract;

6. Appellants have acted rude and disrespectful to board members and the public at board meetings; and

7. Appellants have failed to allow citizens to be heard before board decisions and have refused to answer questions at board meetings.

The trial court determined that some of the grounds listed in the recall petitions were inadequate to meet the requirements of specificity. For example, the trial court determined that the alle-

gations that board members "violated board policies" were inadequate. The trial court also determined that the allegation that the board members "failed to represent the people in the district on all matters of public education by not enforcing the terms of the superintendent's employment contract" was inadequate. In addition, the trial court determined that the allegation "that all members should be permitted to participate fully in board discussion" was insufficient. Nevertheless, the trial court found that the allegation that appellants acted in a manner "directed by the superintendent, including participation in scripted board meetings," was stated with sufficient particularity to allow the recall elections to proceed. The trial court, however, did not address whether any of the remaining allegations were adequate.

We agree with the trial court that the allegations contained in paragraphs 1, 2, and 5 are not stated with sufficient particularity. For example, the allegation that appellants failed to enforce the terms of the superintendent's employment contract lacked specificity. The allegation neglected to state what parts of the contract were not enforced. Moreover, the allegations contained in paragraphs 1 and 2 seemed to assert opinions rather than facts. In addition, all three allegations were very general. Likewise, the allegations under paragraphs 4, 6, and 7 were extremely general and were not stated with sufficient particularity. Without additional facts, the allegations contained in paragraphs 1, 2, 4, 5, 6, and 7 are not specific enough to allow appellants an opportunity to prepare a statement in justification of their conduct as school board members.

Nevertheless, as stated earlier, the trial court did determine that the allegation that appellants acted in a manner "directed by the superintendent, including participation in scripted board meetings" was stated with sufficient particularity. The allegation is listed under paragraph 3. This allegation, however, is not stated with sufficient particularity either. For example, the allegation failed to state how and when the superintendent scripted those meetings or how those scripted meetings violated specific board policies. We are simply asked to assume that board policies were violated by those scripted meetings. Because the allegation fails to specify a

particular scripted meeting and how it violated specific board policies, the allegation is not specific enough to give appellants an opportunity to prepare a statement in justification of their conduct in office.

Although the appellees argue that grounds alleged in the recall petitions are sufficient because the appellants responded to them, this begs the question. Establishing that appellants responded to the recall petition does not establish that the grounds stated in the recall petitions are specific enough, under the *Unger* standards, to allow appellants an opportunity to respond to them. The appellees are asking us to assume that the grounds stated in the recall petitions are specific enough based solely on appellants' response to them. The appellees, however, failed to point to any independent evidence to show that the grounds contained in the recall petitions were specific enough to tell appellants what board policies they violated and how and when they violated those board policies.

Although it would be helpful in our review of these matters, we are not suggesting that a sponsor of a recall petition must always include exact dates and times when stating a ground for recall. Nevertheless, as the *Unger* court noted: "The petitions for recall . . . [should] contain a clear statement of the alleged act or acts constituting the grounds for recall." 240 Kan. at 747. Because the appellees' petitions for recall fail to clearly spell out the acts constituting the grounds for recall, we reverse the holding of the trial court.

Our decision on the sufficiency of the recall petition is determinitive of the case. However we feel obligated to comment on the other issues raised by appellants regarding the sufficiency and validity of the recall petition.

## B. DID THE ALLEGATIONS SHOW INCOMPETENCE?

In the alternative, the appellants contend that even if the reasons set forth in the petitions are stated with sufficient particularity, the allegations do not amount to incompetence under K.S.A. 1999 Supp. 25-4302.

As noted previously, incompetence, under K.S.A. 1999 Supp. 25-4302, is one of the four reasons that may be used to recall a

public officer. Black's Law Dictionary 765 (6th ed. 1990) defines incompetency as "[l]ack of ability, knowledge, legal qualification, or fitness to discharge the required duty or professional obligation. . . . [I]t can refer to lack of legal qualifications or fitness to discharge the required duty and to show want of physical or intellectual or moral fitness," citing *County Bd. of Ed. of Clarke County v. Oliver*, 270 Ala. 107, 116 So. 2d 566, 567 (1959). See *Unger*, 240 Kan. at 743 (defining the term "misconduct in office" as used in K.S.A. 25-4302 and holding that an allegation of willful violation of the Kansas Open Meetings Act constituted a legally sufficient claim of misconduct in office).

Appellants, however, argue that the definition of incompetence provided at K.S.A. 77-201 *Sixth* is the proper definition to apply in this instance. The introductory sentence to K.S.A. 77-201 states that "[i]n the construction of the statutes of this state the following rules shall be observed, *unless the construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the statute.*" (Emphasis added.) The statute defines "incompetent person" as including a "disabled person as defined in K.S.A. 59-3002 and amendments thereto." K.S.A. 1999 Supp. 59-3002, however, provides definitions to be used in the act when "obtaining a guardian or conservator." Appellants' argument that the definitions of incompetency provided in K.S.A. 77-201 and K.S.A. 59-3002 should be applied in the instant case is devoid of authority and is fatally flawed.

For example, if an allegation with sufficient particularity had been stated against the appellants that they were involved in a scheme to disrupt the orderly business functions of the school board, such an allegation would have been sufficient to show appellants' incompetence. The allegation would show that appellants lacked fitness to discharge their duties as board members. Moreover, the allegation would show that appellants lacked moral fitness to remain in office.

As a result, we are unwilling to adopt appellants' narrowed definition of incompetency.

Appellants further contend that the recall petitions do not sufficiently allege incompetence because none of the actions com-

plained of in the petitions could have been accomplished by any single appellant or by all three appellants acting jointly or collectively. This argument, however, is fatally flawed. For example, if only one of the appellants was involved in a scheme to disrupt the orderly business functions of the school board, the actions of this one appellant would be sufficient to show his or her unfitness to remain in office. As a result, appellants' argument fails.

### C. ARE THE PETITIONS INVALID BECAUSE SOME OF THE REASONS IN THE PETITIONS FOR RECALL ARE NOT LEGALLY SUFFICIENT?

Appellants next contend that if one or more of the reasons in the petitions for recall are not legally sufficient then the entire petitions are void. Appellants insist that because the petitions listed a number of reasons for recall, some of which were found to be legally insufficient, the entire petitions are invalid because it is impossible to determine if the signers of the petitions would agree with the allegations found to be sufficient.

This argument is fatally flawed. The petitions for recall state as follows: "I, the undersigned, hereby seek the recall of [appellants] . . . on the ground(s) that . . . [appellants] violated board policies. . . ." Significantly, the petitions do not state that the petitioners are seeking recall based on one or more of the following grounds.

After all the grounds are listed, the petitions state that the recall is being sought for the "foregoing" reasons. Because of how the petitions are worded, the petitioners signed the recall petitions because they agreed with all of the grounds of recall stated therein. If a potential signer disagreed with one or more of the grounds, then he or she would not have signed the petition.

### Should Only Legally Sufficient Reasons Be Posted at the Polling Places?

Finally, appellants insist that when one or more reasons listed in a recall petition are found to be insufficient, then only the legally sufficient reasons should be included in the notices posted by the county election officer at the polling places. Although the trial court

found that some of the reasons listed in the petitions filed against appellants were legally insufficient, the trial court determined that the invalid reasons should be included in the statements for recall to be posted at the polling places under K.S.A. 25-4329.

The legislature intended for local officials to be subject to recall based only upon legally sufficient grounds. This is evidenced by statutes allowing for review of a recall petition by the county election officer (K.S.A. 25-4326) and by the judiciary (K.S.A. 25-4331). It would serve little purpose for an official subject to recall to obtain a determination that one or more of the grounds for recall is insufficient but yet allow those legally insufficient grounds to be posted at the polling places. As a result, we determine that the statements for recall posted at the polling places must contain only the legally sufficient grounds for recall.

Affirmed in part and reversed in part.