ANSTEAD, J.
We have for review Garvin v. Jerome, 721 So.2d 1224 (Fla. 5th DCA 1998), in which the Fifth District Court of Appeal held, contrary to the Fourth District’s decision in Davis v. Friend, 507 So.2d 796 (Fla. 4th DCA 1987), but consistent with the Second District’s determination in Wolfson v. Work, 326 So.2d 90, 91 (Fla. 2d DCA 1976), that despite the invalidity of four of the five grounds upon which a recall election for Phyllis T. Garvin was predicated, Garvin’s recall from office would stand. This Court has jurisdiction. See Art. V, § 3(b)(3), Fla. Const. We quash Garvin.
MATERIAL FACTS AND PROCEEDINGS BELOW
Prior to September 4, 1998, petitions to recall Phyllis T. Garvin, a Councilmember and Vice Mayor of the City of Daytona Beach Shores, Florida, were circulated among voters by members of a recall committee. In the petition, five separate grounds were alleged for Garvin’s removal:
1. Malfeasance due to persistent repeated violations of City Manager form of government and section 3.06 of the Charter by:
a. Giving direct work instructions to city employees William Lazarus, Cathy Benson and Joe Blankenship, *1191 without first going through city manager.
b. Without Council discussion or approval, taking unlawful unilateral action to advertise for a part-time interim City Manager.
2. Malfeasance, as without lawful grounds she makes every effort to deprive applicants of their rights of due process of law.
3. Violation of her oath of office (Sec.2.08) by subverting the City Manager form of government.
4. Misfeasance, in that she continually intimidates and harasses city employees to effectuate her personal desires.
5. Malfeasance of office in that she urged council member Marion Kyser not to attend a council meeting so that a quorum would not be available.
Garvin, 721 So.2d at 1226. On September 4, 1998, the completed petitions were submitted to the Supervisor of Elections of Volusia County. On the same day, Garvin filed a complaint for declaratory relief and injunctive relief with the circuit court, seeking to enjoin the recall proceedings on the basis that the five alleged grounds were improper and invalid.
The trial court conducted a hearing on September 19, 1998, and subsequently entered its Findings of Fact, Conclusions of Law and Order Scheduling Recall Election. In this order, the trial court concluded that three of the five grounds contained in the petition for recall were legally insufficient. Nevertheless, it also determined that inclusion of those three legally insufficient bases did not invalidate the petition. Garvin appealed.
FOUR OF FIVE GROUNDS INVALID
Upon review, the Fifth District concluded that four of the five grounds included therein were not legally sufficient: three were determined to be too vague, and the fourth (the “not uncommon political strategy” of urging a fellow councilman not to attend a meeting to deprive it of a quorum) was determined not to be a violation of the City Charter. See id. at 1226. However, the appellate court still affirmed the trial court’s decision, on the basis that one ground alleged in the petition was legally sufficient.[1] See id. at 1226-27.
The district court disagreed with Gar-vin’s argument that the legally insufficient bases should invalidate the entire petition. Rather, consistent with the Second District’s opinion in Wolfson (and contrary to the Fourth District’s rationale in Davis), it held that pursuant to section 100.361, Florida Statutes, a petition containing one legally sufficient ground for recall would not be invalidated because it includes other, insufficient grounds.[2] See 721 So.2d at 1227.
*1192 LAW AND ANALYSIS
Section 100.361(l)(a), Florida Statutes (1997), expressly provides that a recall petition must be “limited solely to the grounds specified in paragraph [1](b).” In fact, the “limited” language was added soon after the Wolfson case was decided. Here, it has been determined that four of the five grounds set out in the recall petition fall outside the grounds provided in paragraph (l)(b) and are invalid. In Davis, the Fourth District held that, where a recall proceeding was predicated on four substantive charges set forth in a recall petition and three of the four were stricken as legally insufficient, the petition with its one remaining charge could not serve as the basis for a recall election. See 507 So.2d at 796-97. In Wolfson, the Second District held that one legally sufficient charge in a recall petition provides a valid basis for the recall process, and “[o]nly the complete failure of all the charges to meet the statutory requirements will justify enjoining an election.” 326 So.2d at 91.
Based upon the unambiguous language of the recall statute we conclude that the opinion of the Fourth District in Davis contains the correct analysis. In Davis, the court explained:
[W]e agree with appellants that the instant recall proceedings, predicated from the outset on four (4) substantive charges, cannot serve as the basis for a recall election now that three (3) of the four (4) charges have been stricken.
The trial court correctly ruled that in the absence of controlling precedent from this court, it was obligated to follow the holding of our sister court that a recall election may proceed under similar circumstances. See Wolfson v. Work, 326 So.2d 90 (Fla. 2d DCA 1976). Wolfson may be distinguishable in that the trial and appellate courts refused to rule on the validity of several charges after determining that the first ground was sufficient to sustain recall proceedings. The appellate court noted that the additional allegations “would likely surface during a campaign anyway.” Id. at 92. The recall statute requires the approval of a petition by a substantial number of voters before a recall election may be scheduled pursuant to that petition. § 100.361, Fla. Stat. (1985). Here, three (3) distinct charges have actually been ruled invalid and it is undisputed on this record that a substantial number of voters endorsed the petition on the basis of all four charges. We agree with appellants that it is impossible to determine whether those voters would have endorsed the recall petition in the absence of three (3) charges, all of which we note superficially appear to be more serious than the remaining charge. We disagree with Wolfson to the extent it holds that recall proceedings may not be enjoined even though they are predicated on a petition substantially based on invalid grounds.
Davis v. Friend, 507 So.2d at 797. We agree with the Fourth District that the potential for abuse inherent in a rule of law which would allow a recall election to be based upon a petition containing invalid grounds is patent.
In this case we are urged to permit the recall of a duly elected public official upon grounds that have been determined to be invalid under the statutory scheme for recall elections. To permit a recall under such circumstances would constitute a clear violation of the statute’s limitation of *1193 grounds for recall and permit an illegal recall based on unlawful grounds.
As has been suggested by other courts addressing this issue, it would be impossible to prove or determine after the fact, in accordance with any legally acceptable standard, how electors would have responded, had a substantial or significant part of a multifaceted petition been eliminated before the qualifying signatures had been obtained. See Bonkowski v. Macomb County Election Comm’n, 185 Mich.App. 288, 460 N.W.2d 308, 310 (1990) (observing that “[i]t is indeterminable whether all signatures would have been obtained absent the improper inclusion of the contested conduct”); Morton v. McDonald, 41 Wash.2d 889, 252 P.2d 577, 578 (1953) (characterizing as “cogent and convincing” appellant’s argument that “it cannot be presently determined how many voters signed the recall petitions because of one or another of the charges now held to be insufficient”). Cf. Davis, 507 So.2d at 797 (observing that, in the case before it, three distinct charges had been ruled invalid and it was “undisputed on this record that a substantial number of voters endorsed the petition on the basis of all four charges,” but agreeing with appellants that it was “impossible to determine whether those voters would have endorsed the recall petition in the absence of three [invalid] charges”). There can be little doubt that the presence of the invalid grounds would taint any recall election based thereon.
We also agree that approval of a ballot containing invalid grounds would almost certainly lead to abuse. For example, to garner support for a recall petition, an astute draftsman could couple legally insufficient (but politically charged) allegations with legally sufficient (but less politically compelling) grounds. While the valid grounds might not generate support for the recall petition, the invalid grounds might. Unless, upon judicial review, a defective petition endorsed by voters is invalidated, the legitimate purposes served by the recall statute would be severely undermined. We agree that the public policy underlying the legislative scheme does not mandate that officials who have been duly elected to their positions of responsibility should have to face an extraordinary recall election with every vote they cast or statement they make. As pointed out by Justice McFarland in Unger v. Horn, 240 Kan. 740, 732 P.2d 1275, 1285 (1987) (McFarland, J., dissenting), “[v]oters may be angry with an elected official over how he or she voted on a controversial issue, the firing of a public employee upon taking office, how the officer behaved at some function, or a hundred other reasons— none of which is a valid ground for recall under [the applicable recall statute].”
As the statutory scheme for recall-elections presently stands, it is apparent that recall is treated as an extraordinary proceeding with the burden on those seeking to overturn the regular elective process to base the petition upon lawful grounds or face the invalidation of the proceedings. In our view, the present legislative scheme protects public officials from being ousted when illegal grounds provide the basis for recall. Since we place enormous value on the regular elective process, this legislative scheme is certainly not unreasonable. Accordingly, public officials should not face removal from the office they were lawfully and properly elected to on a ballot that contains illegal grounds for recall in express violation of the statute.
Based upon the foregoing, we quash Garvin, disapprove Wolfson, and approve Davis. We remand to the district court for further proceedings consistent herewith.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, PARIENTE and QUINCE, JJ., concur.
LEWIS, J., dissents with an opinion.

. Petitioner had argued, both to the trial court and on appeal, that the allegation contained in item 1(a) of the recall petition did not state a violation of the City Charter provision set forth in the petition. See id. at 1226. Therefore (petitioner asserted), the alleged conduct did not constitute an allegation of "malfeasance” under section 100.361, Florida Statutes (1997) (regarding recall petitions), and was not a sufficient basis upon which to base a recall petition.
The implicated charter provision, section 3.06, City Charter of the City of Daytona Beach Shores, provides in pertinent part that, "[ejxcept for purposes of investigation, inquiry and information, the Council and committees or individual members thereof, shall deal with the City Officers and employees of the City solely through the manager and neither the Council or its members shall give orders to such officer or employee, either publicly or privately.” The Charter provides, further, that ”[a]ny such action shall constitute malfeasance within the meaning of Article IV, Section 7(a) of the Florida Constitution.” The petitioner contended that "instructions” were substantively different from "orders,” and thus no violation of the Charter had been alleged. The Fifth District disagreed with petitioner’s position, determining, as did the trial court, that the first ground for recall was legally sufficient.

. In so holding, the Fifth District opined that Davis could not be distinguished:
One could attempt to distinguish Davis from Wolfson on the ground that there was some kind of showing in Davis that a substantial number of voters endorsed the peti- *1192 lion on the basis of all four charges and that the three charges stricken "superficially appear[ed] to be more serious" than the remaining legally sufficient charge. Id. However, in the next breath the court recognized that "it is impossible to determine whether those voters would have endorsed the recall petition in the absence of three (3) [invalid] charges." Id. Nor do we think appellate courts have sufficient guidance in the law to determine whether stricken charges are "more serious” than a remaining sufficient charge. If legally insufficient, it is difficult to conclude the charges are "more serious.”
Garvin, 721 So.2d at 1227.