IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CYNTHIA BURTON,

      Appellant,

v.

                                       Case No.  5D23-1573
                                       LT Case No. 2023-CA-8

CRAIG OATES, AS CHAIR OF THE
RECALL COMMITTEE,

      Appellee.

_____/

Opinion filed June 12, 2023

Appeal from the Circuit Court
for Putnam County,
Kenneth J. Janesk, Judge.

Meagan L. Logan, of Douglas &
Douglas, Lake City, for Appellant.

Marc J. Randazza and Richard J.
Mockler, of Randazza Legal Group,
PLLC, Tampa, for Appellee.


LAMBERT, C.J.

On January 14, 2021, Appellant, Cynthia Burton, an elected city commissioner for the city of Crescent City, attended a regularly scheduled meeting of the city commission. The agenda for the meeting stated that the "meeting will be conducted in a virtual environment due to the recent escalating COVID-19 outbreaks" but provided a specific description of the procedures to be followed for any member of the public who wished to attend or speak at the meeting.

Approximately twenty-three months after this meeting, Appellee, Craig Oates, filed a petition under section 100.361, Florida Statutes (2022), to recall Burton as city commissioner. The petition designated Oates as the chair of the recall committee and alleged that at the aforementioned January 14, 2021 commission meeting, Burton committed an act of malfeasance under section 100.361(2)(d)1., Florida Statutes, when she, the other city commissioners, the mayor, and the city manager met "in private, behind locked doors at . . . City Hall, depriving members of the general public from attending the meeting in person as required under Florida['s Government-in-the-Sunshine L]aw." The petition stated that "[d]uring the meeting, a motion for an ordinance to abolish the Crescent City Police Department was made."

In response to the recall petition, Burton promptly filed suit in circuit court. She sought a declaratory judgment that the grounds alleged in the

2

recall petition did not constitute "malfeasance" under section 100.361(2)(d), Florida Statutes, and that the recall petition to remove her from office was thus legally insufficient. Burton also sought a judicial determination that Oates, as recall committee chair, did not follow the statutory procedures outlined in section 100.361 when he filed the recall petition directly with the Putnam County Supervisor of Elections instead of the Clerk for the City of Crescent City, thus rendering the petition invalid. Based on these alleged violations, Burton also asked the trial court to enjoin the recall proceedings.

Oates answered the complaint, admitting, among other things, that he filed the recall petition with the director of services for the Supervisor of Elections of Putnam County. The trial court advanced the case on its calendar and promptly held an evidentiary hearing on Burton's complaint. By the time of the hearing, the election on whether to recall Burton had been set for Tuesday, May 30, 2023.

The trial court denied Burton's request for declaratory and injunctive relief. In its written order, the court found that the recall petition was "legally sufficient." The court also found that while it was "clear" from the evidence that a Ms. Karen Hayes "did and still does perform the duties of the 'Crescent City Clerk,'" it was nevertheless permissible under section 100.361 for Oates

3

to have filed the recall petition directly with the Putnam County Supervisor of Elections, instead of Ms. Hayes.

Burton has timely appealed. Due to the abbreviated time frame before the election, an emergency panel was assigned on May 26, 2023, that issued an order allowing the May 30th election to go forward; it also stayed the result of the election and prohibited Burton's removal from office pending disposition of this appeal. For the following reasons, we reverse the order denying Burton relief.

## ANALYSIS

Burton first argues that the trial court erred in denying her relief because, procedurally, Oates failed to comply with the requirement of section 100.361, Florida Statutes, by failing to file the recall petition with the Clerk of Crescent City. We agree.

Section 100.361 is succinctly titled "Municipal recall" and sets forth the procedure by which a city commissioner of a municipality may be recalled from office by the electors of the municipality. The statute carefully delineates: (1) the content requirements for the recall petition; (2) the requisite number of signatures for the petition based upon the number of registered electors in the municipality; (3) that there be a designated recall committee, with a specific person named as the chair who acts on behalf of

4

the committee; (4) the limited, enumerated grounds for the removal of an elected official and the requirement that the grounds for recall be set forth in the petition; and (5) the process of obtaining electors' signatures on the recall petition. *See* § 100.361(2)(a)–(e), Fla. Stat. (2022).

Subsection 100.361(2)(f) addresses the process of filing the recall petition forms. Specifically, the chair of the recall committee "shall file the signed petition forms with the auditor or clerk of the municipality . . . , or his or her equivalent." § 100.361(2)(f). The trial court found in its order that "[t]he testimony was clear that [an individual by the name of] Karen Hayes is absolutely the Clerk of Crescent City, now in name, but since 2021 in job duties." Equally clear was that Oates did not file the recall petition with Ms. Hayes. Instead, as previously mentioned, he filed it with the office of the Putnam County Supervisor of Elections.

Burton argued below, as she does here, that Oates's filing of the recall petition with the Supervisor of Elections violated the plain language of the statute. The trial court disagreed, explaining that filing the recall petition with the County Supervisor of Elections was permissible under section 100.361(2)(f) because the statute was silent as to whether only one person can serve as the municipality's "auditor, clerk, or equivalent" and that "common sense would say that there is no prohibition on multiple clerks."

Thus, the issue before our court is one of statutory interpretation—whether the trial court correctly interpreted section 100.361(2)(f) to permit a County Supervisor of Elections to separately be the "equivalent" of the clerk of a municipality in a recall election when there is an existing clerk of the municipality. We review statutory interpretation de novo. *Cohen v. Autumn Vill., Inc.*, 339 So. 3d 429, 430 (Fla. 1st DCA 2022) (citing *Ag. for Health Care Admin. v. Best Care Assurance, LLC*, 302 So. 3d 1012, 1015 (Fla. 1st DCA 2020)). The Florida Supreme Court has made very clear that, for purposes of statutory interpretation, courts are to apply the "supremacy-of-text principle"—namely, that "[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means." *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946 (Fla. 2020) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 56 (2012)).

Here, the plain text of section 100.361(2)(f) does not provide for multiple persons to act as the auditor or clerk of the municipality. The text provides that the recall petition is to be filed with the auditor or clerk of the municipality and, if there is no clerk or auditor, with someone who is acting as their "equivalent." As found by the trial court, there was a clerk of the municipality—Karen Hayes. Moreover, the Legislature set forth in section

6

100.361 very distinct and separate duties for the clerk of a municipality and the County Supervisor of Elections in the recall election process. *See* § 100.361(2)(g), (3). Had the Legislature also intended the County Supervisor of Elections to act as the "equivalent" of the clerk of the municipality during a recall election, it could have easily, clearly done so. It did not.

We further reject Oates's separate argument that the trial court's order should be affirmed because the recall committee substantially complied with section 100.361 by filing the recall petition with the Supervisor of Elections. First, section 100.361(2)(f) provides that the petition shall be filed with the municipality's auditor, clerk, or their equivalent. "Shall" is mandatory. *Sanders v. City of Orlando*, 997 So. 2d 1089, 1095 (Fla. 2008) (citing *Fla. Bar v. Trazenfeld*, 833 So. 2d 734, 738 (Fla. 2002)).

Second, section 100.361 contains no language that permits substantial compliance with the statute. Nor does it provide that the failure to comply with the filing requirements of the statute can be excused if there is an alleged lack of prejudice to the elected official targeted for election recall. *Accord Demase v. State Farm Fla. Ins.*, 351 So. 3d 136, 139–41 (Fla. 5th DCA 2022) (Sasso, J., concurring specially) (rejecting a substantial compliance argument as there was nothing in the text of the statute that permitted substantial compliance, "the statute employs the mandatory

7

language 'shall,'" and the Florida Legislature did not include either a substantial compliance or a prejudice exception).

Accordingly, we hold that Oates failed to comply with the procedural requirement of section 100.361 when he filed the signed recall petition with the Putnam County Supervisor of Elections, instead of with Karen Hayes, the Clerk of Crescent City.

We next address Burton's claim that the trial court erred when it determined that the recall petition was "legally sufficient." Section 100.361(2)(d) provides seven enumerated grounds for the recall of an elected municipal officer from office. The recall petition filed in this case alleged that Burton had committed an act of "malfeasance" under section 100.361(2)(d)1.

Malfeasance is the "performance of a completely illegal or wrongful act" by an elected official. *Moultrie v. Davis*, 498 So. 2d 993, 995 (Fla. 4th DCA 1986). As previously stated, the alleged malfeasance in this case was that on January 14, 2021, Burton met with other Crescent City commissioners, together with the mayor and city manager, in private, behind locked doors at City Hall, thus depriving members of the general public from attending the commission meeting in person, "as required by Florida law,"

8

and that, during this meeting, a motion was made for "an ordinance to abolish the Crescent City Police Department."

The "law" Oates asserted that Burton violated is Florida's "Sunshine Law," codified at section 286.011, Florida Statutes (2020).  Subsection (1) of this statute provides, in pertinent part, that "[a]ll meetings of any . . . commission of any . . . municipal corporation . . . at which official acts are to be taken are declared to be public meetings open to the public at all times, and no resolution, rule, or formal action shall be considered binding except as taken or made at such meeting."  *Accord* Art. I, § 24(b), Fla. Const.

We begin our analysis with matters that are not in dispute.  First, commissioners of a municipality must comply with Florida's Sunshine Law. The failure to do so can constitute an act of malfeasance that is properly presented in a recall petition.  *Thompson v. Napotnik*, 923 So. 2d 537, 540 (Fla. 5th DCA 2006).  Second, a public meeting was held at City Hall on January 14, 2021, attended by Commissioner Burton at which business of Crescent City was conducted.  Third, the public was permitted to attend this meeting "virtually," but could not attend in person.

From these facts, the dispositive question is whether, under section 286.011(1), this January 14, 2021 meeting was "open to the public."  If so,

then Burton, by definition, did not commit an act of "malfeasance" by her attendance.

In *Herrin v. City of Deltona*, 121 So. 3d 1094, 1097 (Fla. 5th DCA 2013), our court addressed the phrase "open to the public" contained in Florida's Sunshine Law. We concluded that the term reasonably meant that city commissioner meetings must be properly noticed and made reasonably accessible to the public. *Id.* We also held that the public had no right to speak or be heard at such a meeting. *Id.*

What Oates is essentially asking here is that we interpret section 286.011(1)'s language to mean that a meeting is "open to the public" only if the public can attend the meeting in person, despite the language "in person" being conspicuously absent from the statute. We respectfully decline to do so.

Simply stated, a court "may not 'rewrite the statute or ignore the words chosen by the Legislature so as to expand its terms.'" *State v. Gabriel*, 314 So. 3d 1243, 1248 (Fla. 2021) (quoting *Knowles v. Beverly Enters.-Fla., Inc.*, 898 So. 2d 1, 7 (Fla. 2004)). Had the Legislature intended that a meeting is only "open to the public" under Florida's Sunshine Law when the public is permitted to attend in person, it could have easily stated so. That is the Legislature's prerogative, not ours.

10

Due to the global pandemic, Crescent City placed the public on notice that its January 14, 2021 commission meeting would be conducted in a "virtual environment." The notice specifically advised the public that anyone wishing to participate and speak at the meeting could do so; and, in bold letters, directions were given to the public on how to do so. Oates does not argue here that the public was precluded from participating in the January 14 meeting through the virtual platform described, nor does he contend that the public was not properly noticed concerning the date or time of the meeting.

Lastly, we find the cases cited by Oates in his brief for the proposition that Burton committed malfeasance to be distinguishable. In *Parris v. State*, 48 Fla. L. Weekly D733 (Fla. 4th DCA Apr. 12, 2023), despite the earlier cancellation of a properly noticed city council meeting, three city council members held the meeting and addressed matters related to the city. In *Rhea v. Alachua County School Board*, 636 So. 2d 1383, 1384 (Fla. 1st DCA 1994), the Alachua County School Board held a public meeting more than 100 miles away from its headquarters. In contrast, the citizens of Crescent City were given sufficient notice of the January 14, 2021 meeting, together with a specific procedure that allowed them, as members of the public, to attend and be heard at the meeting.

Accordingly, we hold that the recall petition alleging that Burton committed an act of malfeasance under section 100.361(2)(d) was legally insufficient. We therefore reverse the trial court's order and the results of the subject petition and election to recall Burton as city commissioner for Crescent City.

REVERSED and REMANDED for entry of judgment in favor of Burton.

MAKAR, J., concurs, with opinion.
PRATT, J., concurs, in part, and concurs in result, with opinion.

MAKAR, J., concurring.

Sandwiched between Crescent Lake on its east and Lake Stella on its west, Crescent City, Florida (pop. 1,654), is the birthplace of A. Philip Randolph, who became a prominent civil rights leader in the 1950s and 1960s, and the hometown of Raymond Ehrlich, a future Florida supreme court justice, whose family moved there in 1926. Idyllic lake sunrises and sunsets, along with boating, watersports, and fishing (it is dubbed the "Bass Capitol of the World"), make Crescent City a desirable venue for a laid-back and relaxing lifestyle. Indeed, it describes itself as a "humble community" that is "the oasis of Old Florida" with a "serenity and peacefulness . . . that is like no other."

Despite its tranquil and picturesque veneer, the City has been beset by political acrimony in the form of attempted recalls of municipal officials in recent years.[1] In communities both large and small, the divisiveness of politics that arises during election cycles can spin off into off-cycle squabbles that deteriorate into efforts to recall elected officials. Florida has a history of

---

[1] *See* Order on Plaintiff's Complaint for Declaratory and Injunctive Relief, *West v. Tatum*, No. 2021-CA-87 (Fla. 7th Cir. Ct. May 5, 2021) (The Circuit Court, in and for Putnam County, granted declaratory and injunctive relief based on a legally insufficient recall petition.).

local recall elections, which are inherently contentious and personal in smaller close-knit towns; a statewide recall election involving millions of voters is one thing; a recall election in a quaint neighborly community such as Crescent City, with sixteen hundred and fifty-four residents on 2.1 square miles, is quite another.

Recall systems serve a limited and important purpose: empowering the people to pull the plug on elected public officials who engage in bribery, corruption, and other forms of bad behavior before the completion of their terms. They require a delicate balance of the people's sovereign power over elected officials and the guardrails necessary to ensure that recalls aren't misused to the detriment of local communities and the destabilizing of the democratic process.

> The nature of the recall process balances two opposing positions: the democratic ideal of allowing the people to rectify serious mistakes in choosing officials, on the one hand, and the goal of allowing officials to serve out their term of office unimpeded by having to defend against a series of recall attempts for trifling reasons, by disgruntled political opponents, and the like, on the other.

Jay M. Zitter, *Sufficiency of Technical and Procedural Aspects of Recall Petitions*, 116 A.L.R.5th 1 § 2(a) (2023); *see also* Jay M. Zitter, *Sufficiency of Particular Charges as Affecting Enforceability of Recall Petition*, 114 A.L.R.5th 1 § 2(a) (2023) (same).

Elections themselves are the fundamental check on elected representatives. The longer a representative's term in office, however, the greater the potential for a lack of responsiveness to constituents and a departure from legal norms between elections, and thereby the need for an intra-term means of removing a corrupt elected official; officials mindful of recalls are less likely to engage in corrupt acts because the specter of removal is omnipresent. A downside to recall systems is that they potentially short-circuit the regular election process if used for invalid political or personal purposes; they can create a poisonous atmosphere of charges, counter charges, and vitriol that damage the democratic system itself and reduce rather than increase the potential for effective local governance. Plus, off-cycle recall elections tend to have lower turnouts, potentially skewing the outcomes.[2]

The bottom line on Florida's recall system was best stated almost a quarter century ago by our supreme court in *Garvin v. Jerome*:

> As the statutory scheme for recall elections presently stands, it is apparent that *recall is treated as an extraordinary proceeding with the burden on those seeking to overturn the regular elective process to base the petition upon lawful grounds*

---

[2] The City has 1,013 registered voters, of which only 306 (30.2%) voted in the May 30, 2023, recall election (held the day after the Memorial Day holiday): 180 to remove Burton and 126 to retain her. By contrast, Burton received 350 votes to her opponent's 331, a total voter turnout of 681 (69% of the 987 registered voters at the time) in the 2020 election cycle.

15

*or face the invalidation of the proceedings*. In our view, the present legislative scheme protects public officials from being ousted when illegal grounds provide the basis for recall. Since we place enormous value on the regular elective process, this legislative scheme is certainly not unreasonable.

767 So. 2d 1190, 1193 (Fla. 2000) (emphasis added). The legal issue in *Garvin* was whether the inclusion of one valid ground in a recall petition that contained four invalid grounds for removal nullified the recall process. *Id.* at 1190–91. The court concluded that "[t]here can be little doubt that the presence of the invalid grounds would taint any recall election based thereon." *Id.* at 1193.

The reason is that "approval of a ballot containing invalid grounds would almost certainly lead to abuse." *Id.* As an example, an "astute draftsman could couple legally insufficient (but politically charged) allegations with legally sufficient (but less politically compelling) grounds" in a recall petition, hoping to gain support and signatures because, although "the valid grounds might not generate support for the recall petition, the invalid grounds might." *Id.* Due to the potential for misuse, the supreme court concluded that judicially invalidating a defective petition was necessary, else the "legitimate purposes served by the recall statute would be severely undermined." *Id.*

16

For similar reasons, petitions that make conclusory legal claims or are based on conduct that is lawful (or not unlawful) are facially invalid. For instance, a petition claiming that an official "violated the public meetings" laws—without a supporting statement of facts demonstrating how—is legally insufficient. *Richard v. Tomlinson*, 49 So. 2d 798, 799 (Fla. 1951) (finding a petition invalid where it constituted "nothing more than the statement of a conclusion or opinion without any tangible basis in fact"); *see also Bent v. Ballantyne*, 368 So. 2d 351, 353 (Fla. 1979) ("[T]he mere recital of a statutory ground, without an allegation of conduct constituting that ground[] is insufficient."); *Moultrie v. Davis*, 498 So. 2d 993, 996–97 (Fla. 4th DCA 1986) (holding unspecified allegations in a petition insufficient, citing *Richard* and *Bent*). A reviewing court cannot make a judgment on the facial sufficiency of a bare legal claim without a sufficiently detailed statement of alleged facts. *See Bent*, 368 So. 2d at 352.

The same is true of a claim, supported by a statement of alleged facts, that is false or misleading without additional facts or context. For example, a recall petition that says a mayor failed to attend city commission meetings is invalid because the city charter, which allowed but did not require attendance, did not establish a legal duty to attend. *Sanchez v. Lopez*, 219 So. 3d 156, 159 (Fla. 3d DCA 2017) ("Since the City Charter does not require

17

that the mayor attend commission meetings, then it stands to reason that there cannot be a violation of such duty because the duty does not exist."). Within this category of claims are half-truths, such as a claim that a public official attended a meeting that excluded the public; if the claim fails to mention that a reasonable means of public access was allowed, it amounts to a misleading claim that will lead to invalidation. This type of half-true claim is the "blackest of lies." *Ross v. Bank S., N.A.*, 885 F.2d 723, 757 (11th Cir. 1989) ("That a lie which is half a truth is ever the blackest of lies, That a lie which is all a lie may be met and fought with outright, But a lie which is part a truth is a harder matter to fight.") (Clark, J., dissenting) (quoting Tennyson, *The Grandmother*, stanza 8 (1864)). Citizens have the right to recall their municipal officials, but their petitions must fully and accurately state ultimate facts to be considered by the electorate.

In conclusion, recalls of elected officials based on lawful grounds meet the heavy burden our supreme court has set. At the same time, the supreme court has made clear "that the public policy underlying the legislative scheme does not mandate that officials who have been duly elected to their positions of responsibility should have to face an extraordinary recall election with every vote they cast or statement they make." *Garvin*, 767 So. 2d at 1193 ("[P]ublic officials should not face removal from the office they were lawfully

18

and properly elected to on a ballot that contains illegal grounds for recall in express violation of the statute."). Based on these principles, I fully concur in Chief Judge Lambert's opinion, which holds that the most recent recall attempt in Crescent City's municipal governance is marred both procedurally and substantively. It's worth pointing out that efforts to recall public officials that fail due to procedural infirmities or substantive shortcomings are a drain on not only a community's psyche, but on its limited financial and governmental resources, including legal fees. *See Thornber v. City of Ft. Walton Beach*, 568 So. 2d 914, 917–20 (Fla. 1990). Just as those in public office must safeguard democratic principles and protect the public coffers, those who seek to overturn the regular elective process must strictly comply with procedural and substantive requirements to avoid unnecessarily wasting the people's money.

PRATT, J., concurring in part and concurring in result.

The majority opinion correctly acknowledges that the text and structure of the relevant statutes—and no other considerations—control our resolution of this appeal. *See Forrester v. Sch. Bd. of Sumter Cty.*, 316 So. 3d 774, 776 (Fla. 5th DCA 2021) (Sasso, J.). As to the recall petition's substantive defect, I fully concur in the majority's conclusion that the Sunshine Law contains no requirement that public meetings permit in-person attendance. While section 286.011(1), Florida Statutes (2020), requires that local government meetings be "open to the public at all times," it does not "prescribe any particular *means* of holding" open public meetings. Op. Att'y Gen. Fla. 2020-03 (2020) (emphasis in original). The majority properly rejects Oates's invitation to add the phrase "in person" to the statute.

However, as to the recall effort's procedural defect, unlike the majority, I would not reach the issues of whether section 100.361, Florida Statutes (2022), allows only one person to act as the clerk's or auditor's equivalent and whether Karen Hayes is that person. Instead, I would hold only that the county supervisor of elections cannot, under any circumstances, qualify. That conclusion follows clearly from the statutory text and suffices to adjudicate Burton's procedural defect claim.

Section 100.361(2) provides that the recall committee chair "shall file the signed petition forms with the auditor or clerk . . . or his or her equivalent," and then directs that "[i]mmediately after the filing of the petition forms, the clerk shall submit such forms to the county supervisor of elections" so the supervisor may "promptly verify the signatures[.]" § 100.361(2)(f)–(g). The statute goes on to allocate additional responsibilities between the clerk and the supervisor. *See generally* § 100.361(2)–(4). Whatever under-determinacy might flow from the statute's use of the term "equivalent"—and regardless whether the statute contemplates that multiple officials might qualify—the supervisor cannot fit the bill. Why? Because the statute clearly assigns one set of responsibilities to the clerk, and another to the supervisor. Treating the supervisor as the clerk's equivalent would eviscerate the statute's allocation of petition processing responsibilities between two officials and flout the statutory text by consolidating those responsibilities into one official.

Thus, regardless whether Ms. Hayes may be the clerk's equivalent, and regardless whether additional persons might fit that description, the statute makes very clear that at least one official can't: the supervisor. For that reason, I concur in the majority's conclusion that the recall effort is procedurally defective. I likewise concur in its conclusion that the statute's

21

mandatory language and lack of exceptions preclude Oates's substantial-compliance argument.