No. 88,182

GARY T. RICHARDS, *Appellant,* v. CONNIE J. SCHMIDT, Johnson County Election Commissioner, *Appellee.*

(56 P.3d 274)

Opinion filed October 25, 2002.

*Mark C. Beam-Ward,* of Hill, Beam-Ward & Kruse, LLC, of Overland Park, argued the cause and was on the brief for appellant.

*Cynthia C. Dunham,* assistant county counselor, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: This case involves a first impression question dealing with the statutes governing the recall of locally elected officials, K.S.A. 25-4318 *et seq*.

The facts are not in dispute and are stipulated to by both parties. The timing of events and the actions of the parties explain the precise issue we face.

The City of Merriam, Kansas, has four wards with two councilpersons representing each ward. Gary Glenn was elected in Ward 4 in the April 1999 general election. In that election, 424 votes were cast for all the candidates to that position. K.S.A. 25-4325 states that the number of signatures required for a valid recall petition is 40% of the votes cast in the "last general election."

Gary T. Richards initiated a recall petition against councilman Gary Glen. The grounds for the petition were approved by the Johnson County attorney upon its submission by the Johnson County election officer, as required by K.S.A. 25-4322. Richards was given permission to proceed with the gathering of signatures by the election officer on January 17, 2001.

On April 3, 2001, a general election was held for the second council position in Ward 4. Gayle Stephens was elected. In this election, a total of 675 votes were cast for all the candidates for that position. Forty percent of 424 votes, rounded to the nearest number, is 170, while 40% of 675 votes is 270.

Richards submitted the recall petition on April 16, 2001, with 181 signatures. On May 1, 2001, Connie J. Schmidt, the Johnson County election officer, notified Richards that his recall petition was invalid because it lacked a sufficient number of signatures.

Richards filed the present action, as is permitted by K.S.A. 25-4331. Both parties requested summary judgment. The trial court ruled for Schmidt. It found that under a plain reading of K.S.A. 25-4325, the term "last general election" referred to the most recent election as of the day the completed recall petition (with signatures) was filed with the county election officer. This was deemed to be the April 3, 2001, election, with 675 votes cast and 270 signatures required. The petition with 181 signatures was deemed clearly insufficient. Richards appealed.

The precise issue as framed by the parties is whether the number of signatures required was established at the time the recall petition was approved and allowed to be circulated under K.S.A. 25-4322, K.S.A. 25-4323, and K.S.A. 25-4324 or whether an intervening general election which occurs before the petition is filed becomes the "last general election" as the term is used in K.S.A. 25-4325.

Questions of statutory construction are subject to unlimited review by an appellate court. *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000). In *Todd v. Kelley*, 251 Kan. 512, 515-16, 837 P.2d 381 (1992), we set forth several standards by which we are bound when interpreting statutes:

"The function of the court is to interpret the statutes, giving the statutes the effect intended by the legislature. *State ex rel. Stephan v. Kansas Racing Comm'n*, 246 Kan. 708, 719, 792 P.2d 971 (1990).

. . . .

" 'In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible.' *In re Marriage of Ross*, 245 Kan. 591, 594, 783 P.2d 331 (1989).

. . . .

" 'In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act, but are required to consider and construe together all parts thereof *in pari materia*. When the interpretation of some one section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the strict letter of the law.' *Kansas Commission on Civil Rights v. Howard*, 218 Kan. 248, Syl. ¶ 2, 544 P.2d 791 (1975)."

We first summarize the constitutional and statutory provisions which frame the issue of this appeal.

Article 4, § 3 of the Kansas Constitution states: "All elected public officials in the state, except judicial officers, shall be subject to recall by voters of the state or political subdivision from which elected. Procedures and grounds for recall shall be prescribed by law." K.S.A. 25-4318 *et seq.* sets forth the statutory procedures for recalling a local official.

K.S.A. 25-4320 establishes the requirements for what must be contained in a recall petition. K.S.A. 25-4322(a) directs that the petition must be first filed with the county election officer by the recall committee. Subsection (a) goes on to state: "The county election officer, upon request, shall notify the recall committee of the official number of votes cast for the office of the officer sought to be recalled in the last general election at which a person was elected to such office." The record does not reflect that such a request was made in this case, but the recall committee knew the number of votes cast in the April 1999 election when the petition was submitted to the election officer in January 2001.

K.S.A. 25-4322(b) requires the county or district attorney to determine the sufficiency of the grounds stated in the petition for recall. The grounds of the recall petition were approved, and the recall committee was notified of that determination on January 17, 2001, pursuant to K.S.A. 25-4322(b). At that point, the committee had 90 days to gather the necessary signatures under K.S.A. 25-4324, which states: "The necessary signatures on a petition shall be secured within 90 days from the date that the recall committee receives notice that the county or district attorney has determined that the grounds for recall as stated in the petition are sufficient as required by K.S.A. 25-4322, and amendments thereto."

The determination of whether a petition has sufficient signatures is determined by the provisions of K.S.A. 25-4325, which states:

"The recall committee may file the petition only if signed by registered electors in the election district of the local officer sought to be recalled equal in number to not less than 40% of the votes cast for all candidates for the office of the local officer sought to be recalled in *the last general election* at which a person was elected to such office." (Emphasis added.)

K.S.A. 25-4326 next requires the county election officer to determine the sufficiency of each petition within 30 days of its filing and notify the recall committee if he or she determines that "there is an insufficient number of subscribing qualified registered electors." This is exactly what happened in the facts we face. The petition was approved for circulation on January 17, but was not filed until April 16. In the interim, a general election was held on April

3 for the other councilperson position in the same ward as the councilman sought to be recalled occupied.

The issue is simply stated. Which election is the "last general election" for purposes of computing the number of signatures required? Is it the "last general election" at the time circulation of the petition is approved and commenced or is it the "last general election" at the time the petition with signatures is filed?

The trial court's reasoning and holding applied the plain language of K.S.A. 25-4325 relating to "the last general election at which *a* person was elected to such office." (Emphasis added.) The trial court's memorandum decision made no mention of provisions other than K.S.A. 25-4325 and stated:

"The statute clearly delineates between the office and the office holder. If the legislature had intended for the 40% rule to apply to the number of votes cast at that time the officeholder was elected, they could easily have changed the language to read at 'the last general election at which *the* person was elected to such office.' "

Unfortunately, whether "the last general election" is meant to be a reference to the time of commencing circulation or the actual filing of the signed petition is not plainly stated. K.S.A. 25-4325 references both circulation as well as the filing of the petition.

"Before *being filed*, each petition shall be certified by an affidavit by the sponsor who *personally circulated* the petition. . . . The recall committee may file the petition only if signed by registered electors in the election district of the local officer *sought to be recalled* equal in number to not less than 40% of the votes cast for all candidates for the office of the local officer *sought to be recalled* in the last general election at which a person was elected to such office." (Emphasis added.)

The statute clearly states "before being filed." But, it also references the time of circulation when speaking of "the sponsor who personally circulated the petition." Even the sentence which discusses the 40% requirement twice repeats the phrase "the local officer *sought to be recalled*." The proceedings by which an officer is "sought to be recalled" begins prior to the subsequent filing of the signed petition. Thus, it is unclear whether the statute's reference to "the last general election" is meant to be based on the final filing date or the date the petitioning process is commenced

and the petition is approved for circulation. Furthermore, if we follow our requirement to construe the entire Act *in pari materia,* we must not limit our decision only to the language of K.S.A. 25-4325.

We have previously shown that "the last general election" wording is contained in K.S.A. 25-4322(a), which empowers an individual seeking recall to find out the official number of votes cast at the last general election with the obvious intent of establishing the exact number of signatures necessary to obtain the recall election. Schmidt admits Richards had the right to find out the number of votes in the last general election but argues the legislature intended for that number to change if there is an intervening election. Schmidt further argues any problem could be avoided by the recall committee timing its petition to not fall within 90 days of a general election. A further review of the Act does not really support or clearly disapprove this argument.

The legislature has prescribed certain time limits for recall petitions for local officials in K.S.A. 25-4323. Subsection (a) states that recall cannot be sought less than 120 days after the official is elected, nor less than 180 days before his or her term expires. Also, only one recall petition is permitted within each official's elected term. K.S.A. 25-4523(b). Had an additional time limit been intended, the legislature could have prevented individuals from seeking recall during the time frame which encompasses a general election. It clearly did not do so. So long as it does not work to defeat clear legislative intent to the contrary, under the doctrine of *expressio unius est exclusio alterius,* we are to presume that when legislation expressly includes specific terms, it also intends to exclude those items not listed. *In re Marriage of Killman,* 264 Kan. 33, 42, 955 P.2d 1228 (1998). We cannot interpret K.S.A. 25-4323 to restrict the time when recall petitions can be instituted and filed beyond its stated restrictions.

In *Eveleigh v. Conness,* 261 Kan. 970, 977, 933 P.2d 675 (1997), when discussing the local official recall statutes, we said:

" 'Where a state constitutional provision provides for the recall of public officials, recall is viewed as a fundamental right which the people have reserved to themselves. When the power of recall is a fundamental right, statutes governing

the exercise of the power are to be liberally construed in favor of the ability to exercise it, and any limitations on that power must be strictly construed.' *Unger v. Horn*, 240 Kan. 740, 741, 732 P.2d 1275 (1987)."

The true purpose of the liberal construction doctrine, as articulated in *Unger* and repeated by *Eveleigh*, is to carry out the intention of the legislature. In *Board of Trustees of Butler Co. Comm. College v. Board of Sedgwick Co. Comm'rs*, 257 Kan. 468, 476, 893 P.2d 224 (1995), we said: "The function of liberal construction is called into use where there is ambiguity in the language of the statute or, in other words, where there are two or more interpretations which may fairly be made."

In that we are under a duty to liberally construe the constitutional right of recall as set forth in K.S.A. 25-4318 *et seq.* in favor of the exercise of that right, such a construction supports our finding that "the last general election," as mentioned in both K.S.A. 25-4322(a) and K.S.A. 25-4325, is intended to be based on the date the petition is approved by the county or district attorney or submitted for approval.

Legislative history offers little guidance in determining the issue we face. The Act was originally enacted in 1976 as part of House Bill 2661. See L. 1976, ch. 178. There were discussions about a requirement to limit signatures to those who actually voted for the official but that suggestion was not followed. See, Minutes of Sen. Elections Comm., March 9, 1976. There were also suggestions which turned on whether the number of votes related to the officer sought to be recalled or the last general election in which anyone was elected to the office. That question was resolved by language which relates to the office and not the officeholder. See K.S.A. 25-4322(a).

The parties attempt to utilize Attorney General Opinion No. 99-38, but it does not provide direct guidance and, as we said in *City of Junction City v. Cadoret*, 263 Kan. 164, 173, 946 P.2d 1356 (1997), it is not binding on us.

If we limit our analysis to the language of K.S.A. 25-4325 and the plain meaning of "last general election" as Schmidt argues, we would of necessity reach the same conclusion that the trial court did. Such a narrow interpretation, however, clearly violates our

obligation to construe all parts of an enactment in *pari materia* and, further, to construe an entire act according to its spirit and reason. *Kansas Commission on Civil Rights v. Howard,* 218 Kan. 248, Syl. ¶ 2, 544 P.2d 791 (1975). We further have the specific direction of *Unger* and *Eveleigh* that in viewing the power of recall as a fundamental right we are obligated to liberally construe statutes governing the exercise of that power. We are further directed to strictly construe any limitations on that power.

For the reasons stated above, we construe together all of the provisions of K.S.A. 25-4318 *et seq.* and hold that the term "the last general election" in K.S.A. 25-4325 refers only to the general election for the office of the local officer sought to be recalled held prior to the circulation of the recall petition.

The legislative language most persuasive is that empowering the recall committee to be notified as to the official number of votes at the last general election and therefore the number of signatures required, which is determined when the recall committee first submits the petition to the county election officer. See K.S.A. 25-4322(a). It would be contrary to legislative intent to deprive the recall committee of the meaning of these statutory provisions by allowing the number of required signatures to change in the midst of the petitioning process.

The district court is reversed, and this matter is remanded to the district court with instructions to order the Johnson County election officer to proceed with the recall election as is statutorily provided.

LARSON, S.J., assigned.