NOT DESIGNATED FOR PUBLICATION

No. 111,820

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

BUILDING CONSTRUCTION ENTERPRISES, INC.,
*Appellee*,

v.

PUBLIC BUILDING COMMISSION OF JOHNSON COUNTY, *et al*., (HARTFORD FIRE
INSURANCE COMPANY),
*Appellees*,

(DYNAMIC DRYWALL, INC.),
*Intervenor/Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES CHARLES DROEGE, judge. Opinion filed December 11, 2015. Affirmed.

*Creath L. Pollak*, of Minter & Pollak, of Wichita, and *Mark J. Lazzo*, of Mark J. Lazzo, P.A., of Wichita, for intervenor/appellant Dynamic Drywall, Inc.

*Shane C. Mecham*, of Levy Craig Law Firm, of Kansas City, Missouri, for appellee Hartford Fire Insurance Company, and *Scott C. Long*, of Long & Robinson, LLC, of Kansas City, Missouri, for appellee Building Construction Enterprises, Inc., joins the brief of appellee Hartford.

Before GREEN, P.J., GARDNER, J., and JOHNSON, S.J.

*Per Curiam*:  Building Construction Enterprises, Inc. (BCE), as general contractor, agreed to provide construction services on a project for the Public Building Commission of Johnson County, Kansas. BCE obtained the public works bond required by K.S.A. 60-1111 from Hartford Fire Insurance Company (Hartford). BCE subcontracted some of the

1

construction work to Dynamic Drywall, Inc. (DDI). Disputes then arose among several participants in the project. Litigation eventually ensued between BCE and DDI. Those parties and BCE's surety, Hartford, reached a partial settlement that resolved all their disputes except DDI's claim that BCE and Hartford were liable to DDI for the attorney fees, costs, and expenses it incurred in its efforts to collect what it was due under the subcontract and bond.

The district court conducted a lengthy evidentiary hearing on those remaining issues. Each of the three parties then submitted extensive suggested findings of fact and conclusions of law. The district court ultimately awarded DDI a judgment against BCE for $378,662.10 in attorney fees, costs, and expenses. However, the district court held that Hartford was not liable to DDI for any part of that judgment. DDI appeals only from the district court's judgment in Hartford's favor. We affirm the district court.

ANALYSIS

On appeal DDI first challenges the district court's legal conclusions that neither K.S.A. 60-1111 nor Hartford's written public works bond provided DDI coverage for its attorney fees. In addition, and regardless of the bond issues, DDI claims that the district court erred when it rejected DDI's assertion that Hartford made an "independent, stand-alone" commitment in the parties' written partial settlement agreement to be liable for any of DDI's fees assessed against BCE. DDI does not challenge the district court's factual findings. It acknowledges that each issue involves either the construction and legal effect of written agreements or the interpretation of a statute. Thus, our review on each issue is unlimited. See *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014); *In re Conservatorship of Huerta*, 273 Kan. 97, 106, 41 P.3d 814 (2002) (review of statutory interpretation is unlimited; when statute requires a bond be given, bond must be interpreted in light of statute).

2

*DDI's attorney fees are not covered items under K.S.A. 60-1111 or Hartford's bond.*

We consider first DDI's claim based on the public works bond statute and the written bond. The district court correctly noted that K.S.A. 60-1111(a) requires that a public works contractor supply a surety bond to the State of Kansas conditioned on payment of "all indebtedness incurred for labor furnished, materials, equipment or supplies, used or consumed in connection with or in or about the construction of such public building or in making such public improvements." The written bond Hartford provided here is drawn in the language of the statute and provides in pertinent part:

> "If the Principal or the Subcontractor or Subcontractors of the Principal fails to duly pay all indebtedness incurred for labor furnished, materials, equipment or supplies, used or consumed in connection with or in or about the construction of or in making such public improvements, then the Surety shall pay the same in any amount not exceeding the amount of this obligation, together with any interest as provided by law." (Emphasis added.)

The district court concluded that neither the statute nor the bond here exposed Hartford to liability for DDI's attorney fees because such expenses were not included in the listing of the things the bond must cover. We agree. Had the legislature intended that attorney fees incurred to collect monies due under the bond be treated as the equivalent of "labor furnished, materials, equipment or supplies" used in the relevant project it could have provided for that. It did not.

The district court tacitly applied here the legal maxim of *expressio unius est exclusio alterius*. In *Richards v. Schmidt*, 274 Kan. 753, 758, 56 P.3d 274 (2002) our Supreme Court explained:  "So long as it does not work to defeat clear legislative intent to the contrary, under the doctrine of *expressio unius est exclusio alterius*, we are to

3

presume that when legislation expressly includes specific terms, it also intends to exclude those items not listed." Attorney fees are not listed under the risks a public works bond must cover. While attorney fees may be a project-related indebtedness incurred by DDI, they are clearly not an indebtedness "*incurred for* labor furnished, materials, equipment or supplies, used or consumed in connection with or in or about the construction of such public building or in making such public improvements" under K.S.A. 60-1111. (Emphasis added.) We decline to read into the statute a coverage risk for a public works surety bond that the legislature did not impose. The district court correctly denied these claims.

*The parties' partial settlement agreement does not independently create an obligation that Hartford pay DDI's attorney fees*

DDI also asserts that the partial settlement agreement DDI, BCE, and Hartford entered creates a liability for Hartford to pay DDI's attorney fees independent of the bond and statute. The district court held that "the plain language of the agreement does not state that Hartford has agreed to or is obligated to pay DDI's fees . . . ."

DDI's entire argument in its brief on this point follows:

"Under the Settlement Agreement, Hartford agreed to pay attorney fees, costs and expenses incurred by DDI in this matter. The Settlement Agreement specifically states that 'Hartford and BCE will not contest that Dynamic is entitled to recover attorney fees' except for certain fees not herein germane. The Settlement Agreement constitutes an independent, stand-alone agreement pursuant to which Hartford and BCE are liable to DDI for DDI's attorney fees."

As noted above, we exercise unlimited review over the interpretation and legal effect of written instruments. We are not bound by the lower court's interpretation of those instruments. *Prairie Land Elec. Co-op*, 299 Kan. at 366. The primary rule for

4

interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the contract language without applying rules of construction. *Stechschulte v. Jennings*, 297 Kan. 2, 15, 298 P.3d 1083 (2013). An interpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners. The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided. *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013).

DDI, as it did in the district court, argues that we should isolate one fragment of a sentence from the agreement: "Hartford and BCE will not contest that Dynamic [DDI] is entitled to recover attorney fees . . . ." Then it urges us to construe that fragment as Hartford's agreement that it would pay DDI's attorney fees if any were awarded. But we must review the entire relevant agreement, not just one isolated part. See *Waste Connections of Kansas*, 296 Kan. at 963. The full provision regarding attorney fees provides as follows:

> *"6. Submission of Dynamic's Attorney Fees Claim to Court for Determination*. It is Dynamic's position that BCE and Hartford are liable to Dynamic for attorney fees, costs and expenses ('Fees and Costs'), incurred in connection with the pending Consolidated Lawsuit, pursuant to the Subcontract and applicable statutes; that BCE is the contracting party; and that Hartford is liable for the Fees and Costs pursuant to the Subcontract and Bond. For the purposes of the Subcontract, and only the Subcontract, Dynamic asserts it is entitled to recover Fees and Costs as 'the party prevailing with respect to any such dispute' as that term is used in the Subcontract; that BCE is liable to Dynamic for Fees and Costs as the 'non-prevailing party'; and that Hartford is liable pursuant to the Bond to pay the liability of BCE. Dynamic specifically reserves all of its rights as to recovering prevailing party attorney fees except that Dynamic hereby waives its rights to recover any attorney fees incurred with the law firm of William F. Kluge, Chartered in connection with the claims of REW against Dynamic. Hartford and BCE

5

will not contest that Dynamic is entitled to recover attorney fees (except for attorney fees incurred by Dynamic with William F. Kluge, Chartered in connection with the claims of REW against Dynamic) except that Hartford and BCE specifically reserve the right to challenge the amount of attorney fees based on the Subcontract and applicable Kansas law. The Court shall determine the amount of the Fees and Costs. The parties agree to use reasonable efforts to cause the hearing on Dynamic's claim for attorneys' fees and costs to take place within 120 days following execution of this Agreement."

Read as a whole, it is quite apparent that the partial settlement agreement was intended to settle DDI's claims for the work it had done on the project but preserve DDI's attorney fee claims so that they could be decided by the court at a later date. The above paragraph is titled "Submission of Dynamic's Attorney Fee Claim to Court for Determination." The paragraph begins "It is Dynamic's position that BCE and Hartford are liable to Dynamic for attorney fees . . . ." The paragraph states DDI's theory for why Hartford is liable for attorney fees, *i.e.*, "that Hartford is liable pursuant to the Bond to pay the liability of BCE." Then the paragraph says that DDI specifically reserves its rights to recover attorney fees. But there is no language expressing Hartford's agreement to pay any attorney fees the court might award DDI against BCE. In the sentence at issue Hartford and BCE recognize that the settlement the parties reached does not foreclose DDI's claim that it is entitled to attorney fees, but Hartford and BCE specifically reserve their rights to challenge in court the amount of DDI's attorney fees "based on the Subcontract and applicable Kansas law."

We have conducted our unlimited review of the partial settlement agreement. We can find nowhere in the agreement that Hartford agreed to pay DDI's attorney fees. The agreement paragraph excepting the attorney fee claims from the settlement makes it clear that DDI's theory on Hartford's attorney fee liability was "that Hartford is liable pursuant to the Bond to pay the [attorney fee] liability of BCE." The district court considered but, as we noted above, correctly rejected that theory. The district court also correctly determined that Hartford did not agree, independently from any liability required under

the bond and statute, to be liable for any attorney fees the district court might ultimately award DDI against BCE.

Affirmed.